E-Filing

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS (213113)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@lerachlaw.com
      – and –
WILLIAM S. LERACH (68581)
DARREN J. ROBBINS (168593)
TRAVIS E. DOWNS III (148274)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
billl@lerachlaw.com
darrenr@lerachlaw.com
travisd@lerachlaw.com

Attorneys for Plaintiff

FILED
06 DEC 14  PM 12: 02
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N. DISTRICT OF CALIFORNIA

RS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

ROBERT LYNCH, Derivatively on Behalf of
FINISAR CORPORATION,

                    Plaintiff,

         vs.

JERRY S. RAWLS, STEPHEN K.
WORKMAN, DAVID BUSE, JOHN DRURY,
JOSEPH A. YOUNG, ANDERS OLSSON,
FRANK H. LEVINSON, ROGER C.
FERGUSON, DAVID C. FRIES, LARRY D.
MITCHELL, ROBERT N. STEPHENS and
DOMINIQUE TREMPONT,

                    Defendants,

         – and –

FINISAR CORPORATION, a Delaware
corporation,

                    Nominal Defendant.

No. C 06 7660

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS AND
STATE LAW CLAIMS FOR BREACH OF
FIDUCIARY DUTY, ABUSE OF
CONTROL, CONSTRUCTIVE FRAUD,
CORPORATE WASTE, UNJUST
ENRICHMENT, GROSS
MISMANAGEMENT, ACTION FOR
ACCOUNTING AND VIOLATIONS OF
CALIFORNIA CORPORATIONS CODE

DEMAND FOR JURY TRIAL

Original

**NATURE OF THE ACTION**

1.     This is a shareholder derivative action brought by a shareholder of Finisar Corporation ("Finisar" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants").  This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising out of a scheme and wrongful course of business whereby Defendants allowed senior Finisar insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Finisar insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 2000.

2.     Between fiscal 2000 and 2006, Defendants also caused Finisar to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Finisar carried with them an exercise price that was ***not less than*** the fair market value of Finisar's stock on the date of grant and issuance.

3.     In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the lowest price for that relevant period.  By November 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, which contributed to Defendants' ability to sell over $135.4 million worth of Finisar stock.

4.     Finisar's financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Finisar to issue false statements; (ii)

1   diverted hundreds of millions of dollars of corporate assets to senior Finisar executives; and (iii)

2   subjected Finisar to potential liability from regulators, including the SEC and the IRS.

3        5.      Defendants' gross mismanagement and malfeasance over the past decade has exposed

4   Finisar and its senior executives to criminal and civil liability for issuing false and misleading

5   financial statements.  Specifically, Defendants caused or allowed Finisar to issue statements that

6   failed to disclose or misstated the following: (i) that the Company had problems with its internal

7   controls that prevented it from issuing accurate financial reports and projections; (ii) that because of

8   improperly recorded stock-based compensation expenses, the Company's financial results violated

9   Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public

10  disclosures presented an inflated view of Finisar's earnings and earnings per share.

11       6.      Defendants' malfeasance and mismanagement during the relevant period has wreaked

12  hundreds of millions of dollars of damages on Finisar.  The Company's senior executives were

13  incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced

14  stock options and to issue false financial statements to cover up their misdeeds.  Defendants'

15  breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

16  the plans with grant date manipulations so as to void all grants made pursuant to the plans.  The

17  Company has now been mentioned as one of several companies likely to have manipulated options.

18  Meanwhile, certain of the Defendants and former officers, who received under-priced stock options

19  and/or knew material non-public information regarding Finisar's internal control problems, abused

20  their fiduciary relationship with the Company by selling over $135.4 million worth of their

21  personally held shares at artificially inflated prices during the relevant period.  This action seeks

22  recovery for Finisar against these faithless fiduciaries, as Finisar's Board of Directors, as currently

23  composed, is simply unable or unwilling to do so.

24                 **INTRADISTRICT ASSIGNMENT**

25       7.      A substantial part of the events or omissions which give rise to the claims in this

26  action occurred in the county of Santa Clara, and as such this action is properly assigned to the San

27  Jose division of this Court.

28

**JURISDICTION AND VENUE**

8.    The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement.  In connection with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331.  This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  Finisar is located in and conducts its business in this District.  Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

**PARTIES**

12.    Plaintiff Robert Lynch is, and at relevant times was, a shareholder of nominal party Finisar.

13.    Nominal party Finisar is a Delaware corporation with its principal executive offices located at 1389 Moffett Park Drive, Sunnyvale, California.

14.    Defendant Jerry S. Rawls ("Rawls") has served as a director and as Chief Executive Officer ("CEO") of the Company since 1989, and as Chairman of the Board since January 2006. Additionally, Rawls has served as President of Finisar since April 2003 and previously held this position from April 1989 to September 2002.  Because of Rawls' positions, he knew the adverse non-public information about the business of Finisar, as well as its finances, markets and present and

1  future business prospects, via access to internal corporate documents, conversations and connections

2  with other corporate officers and employees, attendance at management and Board meetings and

3  committees thereof and via reports and other information provided to him in connection therewith.

4  During the relevant period, Rawls participated in the issuance of false and/or misleading statements,

5  including the preparation of the false and/or misleading press releases and SEC filings. Based on his

6  knowledge of material non-public information regarding the Company, defendant Rawls violated

7  Cal. Corp. Code §§25402 and 25502.5 by entering into prepaid forward contracts for 3 million

8  shares of Finisar stock for proceeds of $33.3 million during the relevant period.

9       15.    Defendant Stephen K. Workman ("Workman") has served as Chief Financial Officer

10  ("CFO") of Finisar since March 1999 and additionally has served Secretary of the Company since

11  August 1999 and as Senior Vice President, Finance since September 2002. Currently, Workman is

12  on a medical leave of absence granted by the Board of Directors on November 29, 2006. Previously,

13  Workman served as Vice President, Finance from March 1999 to August 2002.   Because of

14  Workman's positions, he knew the adverse non-public information about the business of Finisar, as

15  well as its finances, markets and present and future business prospects, via access to internal

16  corporate documents, conversations and connections with other corporate officers and employees,

17  attendance at management meetings and via reports and other information provided to him in

18  connection therewith. Defendant Workman, by his specialized financial expertise, was in a unique

19  position to understand the business of Finisar, as well as its finances, markets and present and future

20  business prospects. During the relevant period, Workman participated in the issuance of false and/or

21  misleading statements, including the preparation of the false and/or misleading press releases and

22  SEC filings. Based on his knowledge of material non-public information regarding the Company,

23  defendant Workman violated Cal. Corp. Code §§25402 and 25502.5 by selling 124,199 shares of

24  Finisar stock for proceeds of $3.5 million during the relevant period.

25       16.    Defendant David Buse ("Buse") has served as Senior Vice President and General

26  Manager, Network Tools Group of Finisar since June 2005. Defendant Buse joined the Company in

27  December 2003 as Senior Vice President, Sales and Marketing. Because of Buse's position, he

28  knew the adverse non-public information about the business of Finisar, as well as its finances,

markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Buse participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

17.     Defendant John Drury ("Drury") was appointed as the Acting CFO of Finisar on November 29, 2006, temporarily filling the position of Workman, who is currently on medical leave, and additionally has served as the Company's Corporate Controller since February 2004. Because of Drury's positions, he knew the adverse non-public information about the business of Finisar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. Defendant Drury, by his specialized financial expertise, was in a unique position to understand the business of Finisar, as well as its finances, markets and present and future business prospects. During the relevant period, Drury participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

18.     Defendant Joseph A. Young ("Young") has served as Senior Vice President and General Manager, Optics Group of Finisar since June 2005. Defendant Young joined the Company in October 2004 as Senior Vice President Operations. Because of Young's position, he knew the adverse non-public information about the business of Finisar, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Young participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

19.     Defendant Anders Olsson ("Olsson") has served as Senior Vice President, Engineering of Finisar since January 2004. Because of Olsson's position, he knew the adverse non-public information about the business of Finisar, as well as its finances, markets and present and

1 future business prospects, via access to internal corporate documents, conversations and connections

2 with other corporate officers and employees, attendance at management meetings and via reports and

3 other information provided to him in connection therewith.  During the relevant period, Olsson

4 participated in the issuance of false and/or misleading statements, including the preparation of the

5 false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-

6 public information regarding the Company, defendant Olsson violated Cal. Corp. Code §§25402 and

7 25502.5 by selling 20,000 shares of Finisar stock for proceeds of $65,400 during the relevant period.

8     20.    Defendant Frank H. Levinson ("Levinson") founded Finisar in 1988 and has served as

9 a director of the Company since its founding.  Previously, Levinson served as CEO from 1988 to

10 August 1999 and additionally served as Chairman of the Board and Chief Technical Officer from

11 August 1999 to December 2005.  Because of Levinson's positions, he knew the adverse non-public

12 information about the business of Finisar, as well as its finances, markets and present and future

13 business prospects, via access to internal corporate documents, conversations and connections with

14 other corporate officers and employees, attendance at management and/or Board meetings and

15 committees thereof and via reports and other information provided to him in connection therewith.

16 During the relevant period, Levinson participated in the issuance of false and/or misleading

17 statements, including the preparation of the false and/or misleading press releases and SEC filings.

18 Based on his knowledge of material non-public information regarding the Company, defendant

19 Levinson violated Cal. Corp. Code §§25402 and 25502.5 by selling 12 million shares of Finisar

20 stock for proceeds of $98 million during the relevant period.

21     21.    Defendant Roger C. Ferguson ("Ferguson") has been a director of Finisar since

22 August 1999.  Because of Ferguson's position, he knew the adverse non-public information about

23 the business of Finisar, as well as its finances, markets and present and future business prospects, via

24 access to internal corporate documents, conversations and connections with other corporate officers

25 and employees, attendance at Board meetings and committees thereof and via reports and other

26 information provided to him in connection therewith.  During the relevant period, Ferguson

27 participated in the issuance of false and/or misleading statements, including the preparation of the

28 false and/or misleading press releases and SEC filings.  As a member of the Compensation

1    Committee, defendant Ferguson controlled the other Defendants' stock option awards. As a member

2    (Chair) of the Audit Committee and member of the Nominating and Corporate Governance

3    Committee, defendant Ferguson caused or allowed the dissemination of the improper public

4    statements described herein. Based on his knowledge of material non-public information regarding

5    the Company, defendant Ferguson violated Cal. Corp. Code §§25402 and 25502.5 by selling 40,000

6    shares of Finisar stock for proceeds of $431,833 during the relevant period.

7         22.    Defendant David C. Fries ("Fries") has been a director of Finisar since June 2005.

8    Defendant Fries serves as the Chairperson of the Compensation Committee and as a member of the

9    Nominating and Corporate Governance Committee.

10        23.    Defendant Larry D. Mitchell ("Mitchell") has been a director of Finisar since October

11   1999. Because of Mitchell's position, he knew the adverse non-public information about the

12   business of Finisar, as well as its finances, markets and present and future business prospects, via

13   access to internal corporate documents, conversations and connections with other corporate officers

14   and employees, attendance at Board meetings and committees thereof and via reports and other

15   information provided to him in connection therewith. During the relevant period, Mitchell

16   participated in the issuance of false and/or misleading statements, including the preparation of the

17   false and/or misleading press releases and SEC filings. As a member of the Audit and Nominating

18   and Corporate Governance Committees, defendant Mitchell caused or allowed the dissemination of

19   the improper public statements described herein. As a member of the Compensation Committee,

20   defendant Mitchell controlled the other Defendants' stock option awards.

21        24.    Defendant Robert N. Stephens ("Stephens") has been a director of Finisar since

22   August 2005. Defendant Stephens serves as a member of the Compensation and Nominating and

23   Corporate Governance Committees.

24        25.    Defendant Dominique Trempont ("Trempont") has been a director of Finisar since

25   August 2005. Defendant Trempont serves as a member of the Audit Committee.

26        26.    The defendants identified in ¶¶14 and 20-25 are referred to herein as the "Director

27   Defendants." The defendants identified in ¶¶14-19 are referred to herein as the "Officer

28

1  Defendants." The defendants identified in ¶¶14-15 and 19-21 are referred to herein as the "Insider
2  Selling Defendants."

3                                **DEFENDANTS' DUTIES**

4       27.     Each officer and director of Finisar named herein owed the Company and Finisar
5  shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and
6  administration of the affairs of the Company, as well as in the use and preservation of its property
7  and assets. The conduct of Finisar's directors and officers complained of herein involves knowing,
8  intentional and culpable violations of their obligations as officers and directors of Finisar. Further,
9  the misconduct of Finisar's officers has been ratified by Finisar's Board, which has failed to take any
10 legal action on behalf of the Company against them.

11      28.     By reason of their positions as officers, directors and fiduciaries of Finisar and
12 because of their ability to control the business and corporate affairs of the Company, the Defendants
13 owed Finisar and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were
14 required to use their ability to control and manage Finisar in a fair, just, honest and equitable
15 manner, and to act in furtherance of the best interests of Finisar and its shareholders so as to benefit
16 all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as
17 officers and/or directors of a publicly held company, the Defendants had a duty to refrain from
18 utilizing their control over Finisar to divert assets to themselves via improper and/or unlawful
19 practices. Defendants also had a duty to promptly disseminate accurate and truthful information
20 with respect to the Company's operations, earnings and compensation practices.

21      29.     Because of their positions of control and authority as directors or officers of Finisar,
22 each of the Defendants was able to and did, directly and indirectly, control the wrongful acts
23 complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or
24 acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Finisar to
25 disseminate false Proxy Statements for 2000-2006, which Proxy Statements failed to disclose
26 Defendants' option backdating scheme and omitted the fact that executive officers were allowed to
27 backdate their stock option grants in order to manipulate the strike price of the stock options they
28 received. Because of their positions with Finisar, each of the Defendants was aware of these

1   wrongful acts, had access to adverse non-public information and was required to disclose these facts

2   promptly and accurately to Finisar shareholders and the financial markets but failed to do so.

3       30.    Between 2000 and 2006, Defendants repeated in each Proxy Statement that the stock

4   option grants made during that period carried an exercise price that was not less than the fair market

5   value of Finisar stock on the date granted, as calculated by the public trading price of the stock at the

6   market's close on that date.  However, Defendants concealed until November 2006 that the stock

7   option grants were repeatedly and consciously **backdated** to ensure that the strike price associated

8   with the option grants was at or near the lowest trading price for that fiscal period.  Due to

9   Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff

10  seeks to have the directors' and officers' plans voided and gains from those plans returned to the

11  Company.  In the alternative, plaintiff seeks to have all of the unexercised options granted to

12  defendants between 2000 and 2002 cancelled, the financial gains obtained via the exercise of such

13  options returned to the Company and to have Defendants revise the Company's financial statements

14  to reflect the truth concerning these option grants.

15      31.    To discharge their duties, the directors of Finisar were required to exercise reasonable

16  and prudent supervision over the management, policies, practices and controls of the business and

17  financial affairs of Finisar.  By virtue of such duties, the officers and directors of Finisar were

18  required, among other things, to:

19          (a)    manage, conduct, supervise and direct the business affairs of Finisar in

20  accordance with all applicable law (including federal and state laws, government rules and

21  regulations and the charter and bylaws of Finisar);

22          (b)    neither engage in self-dealing nor knowingly permit any officer, director or

23  employee of Finisar to engage in self-dealing;

24          (c)    neither violate nor knowingly permit any officer, director or employee of

25  Finisar to violate applicable laws, rules and regulations;

26          (d)    remain informed as to the status of Finisar's operations, including its practices

27  in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and

28  upon receipt of notice or information of imprudent or unsound practices, to make a reasonable

1    inquiry in connection therewith, and to take steps to correct such conditions or practices and make

2    such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of

3    candor to the Company's shareholders;

4            (e)    prudently protect the Company's assets, including taking all necessary steps to

5    recover corporate assets (cash, stock options) improperly paid to Company executives and directors

6    together with the related costs (professional fees) proximately caused by the illegal conduct

7    described herein;

8            (f)    establish and maintain systematic and accurate records and reports of the

9    business and affairs of Finisar and procedures for the reporting of the business and affairs to the

10   Board of Directors and to periodically investigate, or cause independent investigation to be made of,

11   said reports and records;

12           (g)    maintain and implement an adequate, functioning system of internal legal,

13   financial and accounting controls, such that Finisar's financial statements – including its expenses,

14   accounting for stock option grants and other financial information – would be accurate and the

15   actions of its directors would be in accordance with all applicable laws;

16           (h)    exercise control and supervision over the public statements to the securities

17   markets and trading in Finisar stock by the officers and employees of Finisar; and

18           (i)    supervise the preparation and filing of any financial reports or other

19   information required by law from Finisar and to examine and evaluate any reports of examinations,

20   audits or other financial information concerning the financial affairs of Finisar and to make full and

21   accurate disclosure of all material facts concerning, *inter alia,* each of the subjects and duties set

22   forth above.

23           32.    Each Defendant, by virtue of his position as a director and/or officer, owed to the

24   Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due

25   care and diligence in the management and administration of the affairs of the Company, as well as in

26   the use and preservation of its property and assets. The conduct of the Defendants complained of

27   herein involves a knowing and culpable violation of their obligations as directors and/or officers of

28   Finisar, the absence of good faith on their part, and a reckless disregard for their duties to the

1  Company and its shareholders which Defendants were aware or should have been aware posed a risk

2  of serious injury to the Company.  The conduct of the Defendants who were also officers and/or

3  directors of the Company during the relevant period has been ratified by the Director Defendants

4  who comprised Finisar's entire Board during the relevant period.

5       33.    Defendants breached their duties of loyalty and good faith by allowing or by

6  themselves causing the Company to misrepresent its financial results and prospects, as detailed

7  herein *infra*, and by failing to prevent the Defendants from taking such illegal actions.  As a result,

8  Finisar has expended and will continue to expend significant sums of money.  Such expenditures

9  include, but are not limited to:

10         (a)    improvidently paid executive compensation;

11         (b)    increased capital costs as a result of the loss of market capitalization and the

12  Company's damaged reputation in the investment community;

13         (c)    costs incurred to carry out internal investigations and to prepare and file

14  restated financial statements, including legal fees paid to outside counsel; and

15         (d)    incurring possible IRS penalties for improperly reporting compensation.

16       34.    These actions have irreparably damaged Finisar's corporate image and goodwill.  For

17  at least the foreseeable future, Finisar will suffer from what is known as the "liar's discount," a term

18  applied to the stocks of companies who have been implicated in illegal behavior and have misled the

19  investing public, such that Finisar's ability to raise equity capital or debt on favorable terms in the

20  future is now impaired.

21             **AIDING AND ABETTING AND CONCERTED ACTION**

22       35.    In committing the wrongful acts alleged herein, Defendants have pursued or joined in

23  the pursuit of a common course of conduct and acted in concert with one another in furtherance of

24  their common plan.

25       36.    During all times relevant hereto, Defendants collectively and individually initiated a

26  course of conduct which was designed to and did: (i) conceal the fact that the Company was

27  allowing its directors and senior officers to divert hundreds of millions of dollars to Finisar insiders

28  and directors and causing Finisar to misrepresent its financial results; (ii) maintain Defendants'

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 11 -

1   executive and directorial positions at Finisar and the profits, power and prestige which Defendants

2   enjoyed as a result of these positions; (iii) deceive the investing public, including shareholders of

3   Finisar, regarding Defendants' compensation practices and Finisar's financial performance.

4          37.     The purpose and effect of Defendants' common course of conduct was, among other

5   things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross

6   mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning

7   the Company's operation and financial condition and to artificially inflate the price of Finisar

8   common stock so they could dispose of millions of dollars of their own Finisar stock, and enhance

9   their executive and directorial positions and receive the substantial compensation they obtained as a

10  result thereof.

11         38.     Defendants accomplished their common enterprise and/or common course of conduct

12  by causing the Company to purposefully and/or recklessly engage in the option backdating scheme

13  alleged herein and misrepresent Finisar's financial results.  Each of the Defendants was a direct,

14  necessary, and substantial participant in the common enterprise and/or common course of conduct

15  complained of herein.

16         39.     Each of the Defendants aided and abetted and rendered substantial assistance in the

17  wrongs complained of herein.  In taking such actions to substantially assist the commission of the

18  wrongdoing complained of herein, each Defendant acted with knowledge of the primary

19  wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his

20  overall contribution to and furtherance of the wrongdoing.

21                                    **BACKGROUND**

22         40.     Finisar is a provider of optical subsystems and components that connect local area

23  networks, storage area networks and metropolitan area networks.  Finisar's optical subsystems

24  consist primarily of transceivers, which provide the fundamental optical-electrical interface for

25  connecting the equipment used in building these networks. Its line of optical components consists

26  primarily of packaged lasers and photodetectors used in transceivers, primarily for LAN and SAN

27  applications.  Finisar also provides network performance test and monitoring systems to original

28  equipment manufacturers for testing and validating equipment designs and, to a lesser degree, to

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 12 -

1 | operators of networking and storage data centers for testing, monitoring and troubleshooting the

2 | performance of their installed systems.

3 |     41.    Throughout the relevant period, Defendants caused Finisar to grant them millions of

4 | stock options permitting them to buy Finisar stock for pennies on the dollar which they could in turn

5 | sell as the Company's stock price increased. A stock option gives the holder the right to buy a stock

6 | at a certain price in the future. Typically, companies set that price at the same time their directors

7 | approve an option grant, with an exercise price – also known as the "strike price" – usually set at the

8 | closing price of the stock that day, the closing price of the night before or by computing an average

9 | of the high and low prices on the day of the vote.

10 |     42.    However, many of the millions of options granted to Finisar's executives had a

11 | hidden, valuable component: they were misdated, often making them even more significantly

12 | valuable. The misdated stock option grants fell largely into three categories: (i) "look back" grants,

13 | in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January

14 | date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized –

15 | and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15,

16 | but there is a period after January 15 in which the grantor waits to see if a more advantageous price

17 | occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to

18 | complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a

19 | grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,

20 | and although the work is not complete on those grants as of the stated grant date, that date is

21 | nonetheless used).

22 |     43.    Complicating matters and magnifying the harm to Finisar, during the relevant period,

23 | Finisar's internal controls and accounting controls with respect to option grants and exercises, and its

24 | financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and

25 | exercises to be manipulated and the Company's executive compensation expenses to be materially

26 | understated. They also allowed grant dates to be changed to provide executives with more favorably

27 | priced options, in effect augmenting their compensation, with no benefit running to the Company.

28 |

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 13 -

44.     Specifically, in many instances the reported dates Finisar stock options were granted differed from the dates on which the options appear to have been actually granted. The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose.

45.     Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Finisar a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems Finisar faced because of its deficient internal controls. Furthermore, defendants who were members of the Audit Committee during the relevant period had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. The Officer Defendants had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, defendants who were directors of Finisar had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board. Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by Finisar to the investing public and the Company's shareholders during the relevant period.

46.     Specifically, since 2000, Defendants have caused Finisar to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings (or understated its losses) as follows:

| FISCAL YEAR | REPORTED OPERATING EARNINGS (LOSS) (IN MILLIONS) | REPORTED DILUTED EARNINGS (LOSS) PER SHARE FROM CONTINUING OPERATIONS |
|---|---|---|
| 2000 | $2.88 | $0.06 |
| 2001 | $(85.45) | $0.13 |
| 2002 | $(218.74) | $(0.22) |
| 2003 | $(619.75) | $(0.75) |
| 2004 | $(113.83) | $(0.25) |
| 2005 | $(114.11) | $(0.42) |
| 2006 | $(24.92) | $0.03 |

47.     Moreover, throughout the relevant period certain of the Defendants and former officers exercised many of these stock options contributing to their ability to sell over $135.4 million worth of Finisar stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| RAWLS | 06/14/01-06/22/01 | 3,000,000* | $33,302,390* |
| WORKMAN | 08/25/00-03/20/06 | 124,199 | $3,591,037 |
| OLSSON | 07/03/06 | 20,000 | $65,400 |
| LEVINSON | 08/28/00-05/10/06 | 12,008,187 | $98,073,791 |
| FERGUSON | 12/28/00-03/13/06 | 40,000 | $431,833 |
| TOTAL | | 15,192,386 | $135,464,451 |

* These shares were part of a three-year variable prepaid forward contract entered into by the Rawls Family Limited Partnership.

48.     On November 30, 2006, Finisar filed a Form 8-K with the SEC announcing the Company had initiated an internal review of its historical stock option grant practices, stating in part:

Finisar also announced today that it has engaged in a voluntary review of its historical stock option grant practices. The review of stock option grants made since Finisar's initial public offering on November 11, 1999 was initiated by senior management and preliminary results of such review were discussed with the Audit Committee of Finisar's board of directors. Based on the preliminary results of the review, senior management has concluded, and the Audit Committee agrees, that it is likely that the measurement dates for certain stock option grants differed from the recorded grant dates for such awards and that the Company will likely need to restate its historical financial statements to record non-cash charges for compensation expense relating to some past stock option grants.

At this time, the Company has not determined the amount of such charges, the resulting tax implications (which may result in additional tax liabilities), the accounting impact on its financial statements, or which periods may require restatement. The Company has filed a Form 8-K report stating that the financial statements included in its annual and interim reports and any related reports of its independent registered public accounting firm, and all earnings and press releases and similar communications issued by the Company relating to fiscal years ended April 30, 2001 and thereafter should no longer be relied upon. As a result of the

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS     - 15 -

ongoing investigation, Finisar will delay the filing of its Form 10-Q for the quarter ended October 29, 2006.

> The Audit Committee is in the process of conducting a further investigation and has engaged independent legal counsel to assist in the investigation. The Company intends to complete the investigation and resolve these issues as quickly as possible. Finisar executives will refrain from commenting further on the matter until the independent investigation is concluded.

49.     In effect, during the relevant period, the Defendants caused Finisar's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Finisar to issue statements that failed to disclose or misstated the following:  (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Finisar's earnings and earnings per share.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

50.     Plaintiff brings this action derivatively in the right and for the benefit of Finisar to redress injuries suffered and to be suffered by Finisar as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants.  This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

51.     Plaintiff will adequately and fairly represent the interests of Finisar and its shareholders in enforcing and prosecuting its rights.

52.     Plaintiff is an owner of Finisar stock and was an owner of Finisar stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

53.     Based upon the facts set forth throughout this Complaint, applicable law and the longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the Finisar Board of Directors to institute this action against the officers and members of the Finisar

1  Board of Directors is excused as futile.  A pre-filing demand would be a useless and futile act

2  because:

3           (a)    The members of Finisar's Board have demonstrated their unwillingness and/or

4  inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their

5  fellow directors and allies in the top ranks of the corporation for the violations of law complained of

6  herein.  These are people they have developed professional relationships with, who are their friends

7  and with whom they have entangling financial alliances, interests and dependencies, and therefore,

8  they are not able to and will not vigorously prosecute any such action.

9           (b)    The Finisar Board of Directors and senior management participated in,

10  approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to

11  conceal or disguise those wrongs from Finisar's stockholders or recklessly and/or negligently

12  disregarded the wrongs complained of herein, and are therefore not disinterested parties.  As a result

13  of their access to and review of internal corporate documents, or conversations and connections with

14  other corporate officers, employees, and directors and attendance at management and/or Board

15  meetings, each of the Defendants knew the adverse non-public information regarding the improper

16  stock option grants and financial reporting.  Pursuant to their specific duties as Board members, the

17  Director Defendants are charged with the management of the Company and to conduct its business

18  affairs.  Defendants breached the fiduciary duties that they owed to Finisar and its shareholders in

19  that they failed to prevent and correct the improper stock option granting and financial reporting.

20  Certain directors are also dominated and controlled by other directors and cannot act independently

21  of them.  Thus, the Finisar Board cannot exercise independent objective judgment in deciding

22  whether to bring this action or whether to vigorously prosecute this action because each of its

23  members participated personally in the wrongdoing or are dependent upon other Defendants who

24  did.

25           (c)    The acts complained of constitute violations of the fiduciary duties owed by

26  Finisar's officers and directors and these acts are incapable of ratification.

27           (d)    The members of Finisar's Board have benefited, and will continue to benefit,

28  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of

1    control and the perquisites derived thereof, and are incapable of exercising independent objective

2    judgment in deciding whether to bring this action.

3            (e)    Any suit by the current directors of Finisar to remedy these wrongs would

4    likely further expose the liability of Defendants under the federal securities laws, which could result

5    in additional civil and/or criminal actions being filed against one or more of the Defendants, thus,

6    they are hopelessly conflicted in making any supposedly independent determination whether to sue

7    themselves.

8            (f)    Finisar has been and will continue to be exposed to significant losses due to

9    the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself

10   or others who were responsible for that wrongful conduct to attempt to recover for Finisar any part

11   of the damages Finisar suffered and will suffer thereby.

12           (g)    In order to properly prosecute this lawsuit, it would be necessary for the

13   directors to sue themselves and the other Defendants, requiring them to expose themselves and their

14   comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties.

15   This they will not do.

16           (h)    Finisar's current and past officers and directors are protected against personal

17   liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this

18   Complaint by directors' and officers' liability insurance which they caused the Company to purchase

19   for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Finisar.

20   However, due to certain changes in the language of directors' and officers' liability insurance

21   policies in the past few years, the directors' and officers' liability insurance policies covering the

22   Defendants in this case contain provisions which eliminate coverage for any action brought directly

23   by Finisar against these Defendants, known as, *inter alia,* the "insured versus insured exclusion." As

24   a result, if these directors were to sue themselves or certain of the officers of Finisar, there would be

25   no directors' and officers' insurance protection and thus, this is a further reason why they will not

26   bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such

27   insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

28

1          (i)     In order to bring this action for breaching their fiduciary duties, the members

2   of the Finisar Board would have been required to sue themselves and/or their fellow directors and

3   allies in the top ranks of the Company, who are their personal friends and with whom they have

4   entangling financial alliances, interests and dependencies, which they would not do.

5          54.    Plaintiff has not made any demand on shareholders of Finisar to institute this action

6   since such demand would be a futile and useless act for the following reasons:

7          (a)     Finisar is a publicly traded company with approximately 307 million shares

8   outstanding, and thousands of shareholders;

9          (b)     Making demand on such a number of shareholders would be impossible for

10   plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

11          (c)     Making demand on all shareholders would force plaintiff to incur huge

12   expenses, assuming all shareholders could be individually identified.

### THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON FINISAR'S FINANCIAL STATEMENTS

**The Fiscal 2000[1] Form 10-K**

15          55.    On or about July 31, 2000, the Company filed its fiscal 2000 Form 10-K with the

16   SEC.  The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public.

17   The fiscal 2000 Form 10-K included Finisar's fiscal 2000 financial statements which were materially

18   false and misleading and presented in violation of GAAP, due to its improper accounting for the

19   backdated stock options.  As a result, Finisar's compensation expense was understated and its net

20   earnings were overstated.

**The Fiscal 2001 Form 10-K**

22          56.    On or about July 18, 2001, the Company filed its fiscal 2001 Form 10-K with the

23   SEC.  The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public.

24   The fiscal 2001 Form 10-K included Finisar's fiscal 2001 financial statements which were materially

25   false and misleading and presented in violation of GAAP, due to its improper accounting for the

---

[1]      Finisar's fiscal year ends April 30.

1  backdated stock options.  As a result, Finisar's compensation expense was understated and its net

2  earnings were overstated.

3  **The Fiscal 2002 Form 10-K**

4      57.    On or about July 29, 2002, the Company filed its fiscal 2002 Form 10-K with the

5  SEC.  The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public.

6  The fiscal 2002 Form 10-K included Finisar's fiscal 2002 financial statements which were materially

7  false and misleading and presented in violation of GAAP, due to improper accounting for the

8  backdated stock options.  As a result, Finisar's compensation expense was understated and its net

9  earnings were overstated.

10  **The Fiscal 2003 Form 10-K**

11      58.    On or about July 29, 2003, the Company filed its fiscal 2003 Form 10-K with the

12  SEC.  The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.

13  The fiscal 2003 Form 10-K included Finisar's fiscal 2003 financial statements which were materially

14  false and misleading and presented in violation of GAAP, due to improper accounting for the

15  backdated stock options.  As a result, Finisar's compensation expense was understated and its net

16  earnings were overstated.

17  **The Fiscal 2004 Form 10-K**

18      59.    On or about July 14, 2004, the Company filed its fiscal 2004 Form 10-K with the

19  SEC.  The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.

20  The fiscal 2004 Form 10-K included Finisar's fiscal 2004 financial statements which were materially

21  false and misleading and presented in violation of GAAP, due to improper accounting for the

22  backdated stock options.  As a result, Finisar's compensation expense was understated and its net

23  earnings were overstated.

24  **The Fiscal 2005 Form 10-K**

25      60.    On or about July 29, 2005, the Company filed its fiscal 2005 Form 10-K with the

26  SEC.  The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.

27  The fiscal 2005 Form 10-K included Finisar's fiscal 2005 financial statements which were materially

28  false and misleading and presented in violation of GAAP, due to improper accounting for the

1   backdated stock options.  As a result, Finisar's compensation expense was understated and its net

2   earnings were overstated.

3   **The Fiscal 2006 Form 10-K**

4         61.     On or about July 14, 2006, the Company filed its fiscal 2006 Form 10-K with the

5   SEC.  The fiscal 2006 Form 10-K was simultaneously distributed to shareholders and the public.

6   The fiscal 2006 Form 10-K included Finisar's fiscal 2006 financial statements which were materially

7   false and misleading and presented in violation of GAAP, due to improper accounting for the

8   backdated stock options.  As a result, Finisar's compensation expense was understated and its net

9   earnings were overstated.

10   **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

11         62.     The 2000-2006 Proxy Statements concealed Defendants' option backdating scheme.

12   Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on

13   proxy proposals between 2000 and 2006.  In fact, it was not until late 2006 that shareholders learned

14   that the Proxy Statements which they had relied upon for years were false and misleading.

15   Defendants have been unjustly enriched at the expense of Finisar, which has received and will

16   receive less money from the Defendants when they exercise their options at prices substantially

17   lower than they would have if the options had not been backdated.

18   **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

19         63.     Unlike most companies which avoid such option backdating abuse by issuing stock

20   option grants at the same time each year, which eliminates the potential for backdating, Defendants

21   ensured that executives would not have any such restrictions.  Given the many times Finisar's grants

22   were the low of the month in which options were granted, the date of their stock option grants was

23   clearly more than merely coincidental.

24         64.     As a result of the backdating of options, Defendants have been unjustly enriched at

25   the expense of Finisar, which has received and will receive less money from Defendants when they

26   exercise their options at prices substantially lower than they would have if the options had not been

27   backdated.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 21 -

1

**TOLLING OF THE STATUTE OF LIMITATIONS**

2        65.      The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully

3   concealed their manipulation of the stock option plans, through strategic timing and fraudulent

4   backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Finisar's public

5   investors that Finisar's option grants were being administered by a committee of independent

6   directors, and by failing to disclose that backdated options were, in fact, actually issued on dates

7   other than those disclosed, and that strategically timed option grants were issued based on the

8   manipulation of insider information that ensured that the true fair market value of the Company's

9   stock was, in fact, higher than the publicly traded price on the date of the option grant.

10       66.      Finisar's public investors had no reason to know of the Defendants' breaches of their

11  fiduciary duties until November 30, 2006, when Finisar filed a Form 8-K with the SEC announcing

12  that the Company had initiated an internal review of its historical stock option grant practices, stating

13  in part:

14              Finisar also announced today that it has engaged in a voluntary review of its
                historical stock option grant practices. The review of stock option grants made since
15              Finisar's initial public offering on November 11, 1999 was initiated by senior
                management and preliminary results of such review were discussed with the Audit
16              Committee of Finisar's board of directors. Based on the preliminary results of the
                review, senior management has concluded, and the Audit Committee agrees, that it is
17              likely that the measurement dates for certain stock option grants differed from the
                recorded grant dates for such awards and that the Company will likely need to restate
18              its historical financial statements to record non-cash charges for compensation
                expense relating to some past stock option grants.
19
                At this time, the Company has not determined the amount of such charges,
20              the resulting tax implications (which may result in additional tax liabilities), the
                accounting impact on its financial statements, or which periods may require
21              restatement. The Company has filed a Form 8-K report stating that the financial
                statements included in its annual and interim reports and any related reports of its
22              independent registered public accounting firm, and all earnings and press releases
                and similar communications issued by the Company relating to fiscal years ended
23              April 30, 2001 and thereafter should no longer be relied upon. As a result of the
                ongoing investigation, Finisar will delay the filing of its Form 10-Q for the quarter
24              ended October 29, 2006.

25              The Audit Committee is in the process of conducting a further investigation
                and has engaged independent legal counsel to assist in the investigation. The
26              Company intends to complete the investigation and resolve these issues as quickly as
                possible. Finisar executives will refrain from commenting further on the matter until
27              the independent investigation is concluded.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 22 -

67.     Finally, as fiduciaries of Finisar and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Finisar's public shareholders the facts that give rise to the claims asserted herein, *i.e.,* that the Finisar Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

## COUNT I

### Violations of §14(a) of the Exchange Act Against All Defendants

68.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

69.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

70.     The 2000-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that certain of the Defendants were causing Finisar to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 2000.

71.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

72.     The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

1    73.    The Company was damaged as a result of the material misrepresentations and

2  omissions in the Proxy Statements.

3                                    **COUNT II**

4                                    **Accounting**

5    74.    Plaintiff incorporates by reference and realleges each and every allegation set forth

6  above, as though fully set forth herein.

7    75.    At all relevant times, Defendants, as directors and/or officers of Finisar, owed the

8  Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

9    76.    In breach of their fiduciary duties owed to Finisar and its shareholders, the

10  Defendants caused Finisar, among other things, to grant backdated stock options to themselves

11  and/or certain other officers and directors of Finisar and/or failed to properly investigate whether

12  these grants had been improperly made.  By this wrongdoing, the Defendants breached their

13  fiduciary duties owed to Finisar and its shareholders.

14    77.    The Defendants possess complete and unfettered control over the improperly issued

15  stock option grants and the books and records of the Company concerning the details of such

16  improperly backdated stock option grants to certain of the Defendants.

17    78.    As a result of Defendants' misconduct, Finisar has been substantially injured and

18  damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those

19  improperly granted options which have been exercised and sold.

20    79.    Plaintiff demands an accounting be made of all stock option grants made to any of the

21  Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the

22  value of the grants, the recipients of the grants, the exercise date of stock options granted to any of

23  the Defendants, as well as the disposition of any proceeds received by any of the Defendants via sale

24  or other exercise of backdated stock option grants received by those Defendants.

25

26

27

28

**COUNT III**

**Breach of Fiduciary Duty and/or Aiding and Abetting
Against All Defendants**

80.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

81.     Each of the Defendants agreed to and did participate with the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

82.     The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Finisar and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Finisar and its shareholders.

83.     As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Finisar and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

84.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Finisar and its public shareholders.

85.     As a proximate result of Defendants' conduct, Finisar has been injured and is entitled to damages.

**COUNT IV**

**Abuse of Control Against All Defendants**

86.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.     The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Finisar, and to continue to receive the substantial benefits, salaries and emoluments associated with their

1 | positions at Finisar. As a part of this scheme, Defendants actively made and/or participated in the

2 | making of or aided and abetted the making of, misrepresentations regarding Finisar.

3 |      88.     Defendants' conduct constituted an abuse of their ability to control and influence

4 | Finisar.

5 |      89.     By reason of the foregoing, Finisar has been damaged.

6 | **COUNT V**

7 | **Gross Mismanagement Against All Defendants**

8 |      90.     Plaintiff incorporates by reference and realleges each and every allegation set forth

9 | above, as though fully set forth herein.

10 |      91.     Defendants had a duty to Finisar and its shareholders to prudently supervise, manage

11 | and control the operations, business and internal financial accounting and disclosure controls of

12 | Finisar.

13 |      92.     Defendants, by their actions and by engaging in the wrongdoing described herein,

14 | abandoned and abdicated their responsibilities and duties with regard to prudently managing the

15 | businesses of Finisar in a manner consistent with the duties imposed upon them by law. By

16 | committing the misconduct alleged herein, Defendants breached their duties of due care, diligence

17 | and candor in the management and administration of Finisar's affairs and in the use and preservation

18 | of Finisar's assets.

19 |      93.     During the course of the discharge of their duties, Defendants knew or recklessly

20 | disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants

21 | caused Finisar to engage in the scheme complained of herein which they knew had an unreasonable

22 | risk of damage to Finisar, thus breaching their duties to the Company. As a result, Defendants

23 | grossly mismanaged Finisar.

24 |      94.     By reason of the foregoing, Finisar has been damaged.

25 | **COUNT VI**

26 | **Constructive Fraud Against All Defendants**

27 |      95.     Plaintiff incorporates by reference and realleges each and every allegation set forth

28 | above, as though fully set forth herein.

1   96.   As corporate fiduciaries, Defendants owed to Finisar and its shareholders a duty of

2   candor and full accurate disclosure regarding the true state of Finisar's business and assets and their

3   conduct with regard thereto.

4   97.   As a result of the conduct complained of, Defendants made, or aided and abetted the

5   making of, numerous misrepresentations to and/or concealed material facts from Finisar's

6   shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of

7   Finisar.  Thus they have committed constructive fraud and violated their duty of candor.

8   98.   By reason of the foregoing, Finisar has been damaged.

9   **COUNT VII**

10   **Corporate Waste Against All Defendants**

11   99.   Plaintiff incorporates by reference and realleges each and every allegation set forth

12   above, as though fully set forth herein.

13   100.   By failing to properly consider the interests of the Company and its public

14   shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to

15   Defendants via the option backdating scheme, Defendants have caused Finisar to waste valuable

16   corporate assets.

17   101.   As a result of Defendants' corporate waste, they are liable to the Company.

18   **COUNT VIII**

19   **Unjust Enrichment Against All Defendants**

20   102.   Plaintiff incorporates by reference and realleges each and every allegation set forth

21   above, as though fully set forth herein.

22   103.   As a result of the conduct described above, Defendants will be and have been unjustly

23   enriched at the expense of Finisar, in the form of unjustified salaries, benefits, bonuses, stock option

24   grants and other emoluments of office.

25   104.   All the payments and benefits provided to the Defendants were at the expense of

26   Finisar.  The Company received no benefit from these payments.  Finisar was damaged by such

27   payments.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 27 -

1    105.   Certain of the Defendants sold Finisar stock for a profit during the period of

2  deception, misusing confidential non-public corporate information.  These Defendants should be

3  required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense

4  of Finisar.  A constructive trust for the benefit of the Company should be imposed thereon.

5                                   **COUNT IX**

6                    **Against the Officer Defendants for Rescission**

7    106.   Plaintiff incorporates by reference and realleges each and every allegation contained

8  above as though fully set forth herein.

9    107.   As a result of the acts alleged herein, the stock option contracts between the Officer

10  Defendants and Finisar entered into during the relevant period were obtained through Defendants'

11  fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus

12  invalid as they were not authorized in accordance with the terms of the publicly filed contracts

13  regarding the Officer Defendants' employment agreements and the Company's stock option plan

14  which was also approved by Finisar shareholders and filed with the SEC.

15    108.   All contracts which provide for stock option grants between the Officer Defendants

16  and Finisar and were entered into during the relevant period should, therefore, be rescinded, with all

17  sums paid under such contracts returned to the Company, and all such executory contracts cancelled

18  and declared void.

19                                   **COUNT X**

20        **Against the Insider Selling Defendants for Violation of
California Corporations Code §25402**

21

22    109.   Plaintiff incorporates by reference and realleges each and every allegation set forth

above, as though fully set forth herein.

23

24    110.   At the time that the Insider Selling Defendants sold their Finisar common stock as set

25  forth herein at ¶47, by reason of their high executive and/or directorial positions with Finisar, the

Insider Selling Defendants had access to highly material information regarding the Company,

26  including the information set forth herein regarding the true adverse facts of Finisar's improper

27  accounting.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 28 -

111.    At the time of such sales, that information was not generally available to the public or the securities markets.  Had such information been generally available, it would have significantly reduced the market price of Finisar shares at that time.

112.    The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their Finisar common stock in California in violation of California Corporations Code §25402.

113.    Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to Finisar for damages in an amount up to three times the difference between the price at which Finisar common stock was sold by these defendants, and each of them, and the market value which that Finisar common stock would have had at the time of the sale if the information known to these defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## COUNT XI

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

114.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

115.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Finisar common stock on the basis of such information.

116.    The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Finisar common stock.

117.    At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of Finisar common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

1   118.   Since the use of the Company's proprietary information for their own gain constitutes

2   a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the

3   imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

4   **PRAYER FOR RELIEF**

5   WHEREFORE, plaintiff demands judgment as follows:

6   A.   Awarding money damages against all Defendants, jointly and severally, for all losses

7   and damages suffered as a result of the acts and transactions complained of herein, together with pre-

8   judgment interest, to ensure Defendants do not participate therein or benefit thereby;

9   B.   Directing all Defendants to account for all damages caused by them and all profits

10   and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct,

11   including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and

12   imposing a constructive trust thereon;

13   C.   Directing Finisar to take all necessary actions to reform and improve its corporate

14   governance and internal control procedures to comply with applicable law, including, but not limited

15   to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or

16   Articles of Incorporation and taking such other action as may be necessary to place before

17   shareholders for a vote adoption of the following Corporate Governance policies:

18   (i)   a proposal requiring that the office of CEO of Finisar and Chairman of the

19   Finisar Board of Directors be permanently held by separate individuals and that the Chairman of the

20   Finisar Board meets rigorous "independent" standards;

21   (ii)   a proposal to strengthen the Finisar Board's supervision of operations and

22   develop and implement procedures for greater shareholder input into the policies and guidelines of

23   the Board;

24   (iii)   appropriately test and then strengthen the internal audit and control function;

25   (iv)   rotate independent auditing firms every five years;

26   (v)   control and limit insider stock selling and the terms and timing of stock option

27   grants; and

28   (vi)   reform executive compensation.

1   D.  Ordering the imposition of a constructive trust over Defendants' stock options and

2 any proceeds derived therefrom;

3   E.  Awarding punitive damages;

4   F.  Awarding costs and disbursements of this action, including reasonable attorneys',

5 accountants', and experts' fees; and

6   G.  Granting such other and further relief as this Court may deem just and proper.

7           **JURY DEMAND**

8   Plaintiff demands a trial by jury.

9 DATED: December 12, 2006    LERACH COUGHLIN STOIA GELLER
                 RUDMAN & ROBBINS LLP
10                SHAWN A. WILLIAMS

11

12               _____

13                 SHAWN A. WILLIAMS

14               100 Pine Street, Suite 2600
               San Francisco, CA  94111
15               Telephone: 415/288-4545
               415/288-4534 (fax)

16               LERACH COUGHLIN STOIA GELLER
                RUDMAN & ROBBINS LLP
17               WILLIAM S. LERACH
               DARREN J. ROBBINS
18               TRAVIS E. DOWNS III
               655 West Broadway, Suite 1900
19               San Diego, CA  92101-3301
               Telephone: 619/231-1058
20               619/231-7423 (fax)

21               Attorneys for Plaintiff

22 S:\CptDraft\Derivative\Cpt Finisar Corp Derv.doc

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS  - 31 -

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3     named parties, there is no such interest to report.

4

5     _____

6     ATTORNEY OF RECORD FOR PLAINTIFF
      ROBERT LYNCH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FINISAR CORP. VERIFICATION

I, Robert Lynch, hereby verify under the penalty of perjury that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

Date: 12/13/06

Robert Lynch