**FILED**

**NOT FOR PUBLICATION**

APR 26 2011

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT LYNCH, LYNN SHORT, PATRICIA DUBOVI, and CITY OF WORCESTER RETIREMENT SYSTEM, suing derivatively on behalf of Finisar Corporation,<br><br>        Plaintiffs - Appellants,<br>and<br><br>RICHARD SAWCZAK and JAMES ROCCO,<br><br>        Plaintiffs,<br><br>v.<br><br>JERRY S. RAWLS, STEPHEN K. WORKMAN, DAVID BUSE, JOHN DRURY, JOSEPH A. YOUNG, FRANK H. LEVINSON, ROGER C. FERGUSON, DAVID C. FRIES, LARRY D. MITCHELL, ROBERT N. STEPHENS, DOMINIQUE TREMPONT, MARK FARLEY, JAN LIPSON, MICHAEL C. CHILD, HAROLD E. HUGHES, and GREGORY H. OLSEN, | No. 09-17379<br><br>D.C. No. 5:-06-cv-07660 RMW<br><br>MEMORANDUM[*] |

---

    [*]  This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

> Defendants - Appellees,
>
> and
>
> FINISAR CORPORATION, Nominal Defendant
>
> Defendant.

Appeal from the United States District Court
for the Northern District of California,
Ronald M. Whyte, Senior District Judge, Presiding

Submitted December 10, 2010
San Francisco, California

Before: HAWKINS and N.R. SMITH, Circuit Judges, and PRO,[**] District Judge.

Plaintiffs-Appellants City of Worcester Retirement System, Lynn Short, Robert Lynch, and Patricia Dubovi (collectively "Plaintiffs"), stockholders of Finisar Corporation ("Finisar"), appeal the dismissal of their derivative complaint for failure to allege particularized facts that make demand on the corporation's board of directors to pursue the suit futile ("demand futility"). We reverse and remand.

Shareholders suing derivatively must make demand upon the corporation's directors to take corrective action, or else state with particularity the reasons why demand would be futile, before they may proceed with the action. Fed. R. Civ. P.

---

[**] The Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

23.1(b)(3). Because Finisar is incorporated in Delaware, Delaware law defines demand futility here. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999). We review a district court's decision that demand would not have been futile for abuse of discretion. *Id.* at 983.

Demand futility is established where the complaint pleads particularized facts which, taken as true, create a reasonable doubt that "(1) the [majority of] directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). Additionally, a "substantial likelihood of liability" renders a director interested for purposes of demand futility. *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).

As such, and because "[a] director who approves backdating of options faces at the very *least* a substantial likelihood of liability," receipt or approval of backdated options renders a director interested for the purpose of the demand futility inquiry. *Ryan v. Gifford*, 918 A.2d 341, 355-56 (Del. Ch. 2007) ("Backdating options qualifies as one of those rare cases in which a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." (internal quotations omitted)).

3

All the factors which Delaware courts previously have found sufficient to plead demand futility are present in Plaintiffs' Second Amended Complaint ("SAC"). *See Conrad v. Blank*, 940 A.2d 28, 37-40 (Del. Ch. 2007); *Ryan*, 918 A.2d at 354-55. Plaintiffs alleged that demand on Finisar's board was futile because all directors were incapable of being disinterested–specifically because six of the seven directors in place at the time of the suit received and/or approved backdated options, and all seven of Finisar's directors signed false Form 10-Ks, misleading investors and violating federal law. In so claiming, Plaintiffs challenged 12 out of 17 option grants to directors as being dated near or on the day that Finisar hit its low stock price for the month or in advance of a sharp increase in stock price. Plaintiffs also noted that (1) Finisar admitted to incorrectly dating 105 of 151 options, although it never admitted that the challenged options to directors were backdated;[1] (2) Finisar's audit board, which consisted of some of the same directors Plaintiffs allege backdated options,

---

[1] Plaintiffs may rely on the self-incriminatory portions of Finisar's 10-K without having to take the 10-K's self-serving, self-exonerating conclusion of no malfeasance on behalf of the majority of Finisar's board as true. See *Williamson v. U.S.*, 512 U.S. 594, 600 (1994) ("Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements."); cf. Fed. R. Evid. 801(d)(2). Further, while the rule of completeness in Federal Rule of Evidence 106 may require admission of a complete document to avoid a misleading impression, it does not require that the entire content of the document be taken as true in ruling on a defendant's motion to dismiss.

4

offered a vague explanation of the backdating as resulting from "process-related deficiencies," but did not explain how it concluded there was no malfeasance by Finisar's directors; and (3) Finisar's board took no steps to recover its substantial financial losses.

Plaintiffs also alleged that any backdating violated Finisar's stock option plan, which provided no discretion in option pricing and set forth the fixed recording price and date. Accordingly, they reasoned that if Defendants selected any date other than the actual grant date, they could only have done so knowingly, and hence would face a substantial likelihood of liability for the backdated options they granted or received.

Plaintiffs also included a statistical "Merrill Lynch" type[2] analysis to demonstrate that the disputed options were granted at periodic lows in stock price and/or before substantial increases in stock price, and resulted in annualized returns for directors and officers ranging from 200% to more than 3000%, compared to much smaller or even negative returns for average investors. They also alleged the options were granted in a discretionary fashion, rather than on set dates each year, resulting in instances in which grant dates could have been delayed to obtain a more favorable price and some instances in which a grant date was likely selected retrospectively to

---

[2] A Merrill Lynch analysis calculates the annualized returns of option grants at twenty days after the grant and compares it with the company's overall annual return.

obtain a more favorable price. Further, in many cases the related Forms 4 identifying the challenged grants were filed months or even more than a year late, allowing ample opportunity for mischief (e.g. selecting more favorable retrospective grant dates).

When pleading demand futility, "[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, [although] conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Brehm*, 746 A.2d at 255. The pleader need not plead evidence, but he must set forth "particularized factual statements that are essential to the claim." *Id.* at 254 (footnote omitted).

The district court here drew inferences in favor of Defendants rather than Plaintiffs, resolved factual inconsistencies without discovery, and analyzed Plaintiffs' allegations individually rather than collectively. Because Plaintiffs "point[ed] to specific grants, specific language in option plans, specific public disclosures, and supporting empirical analysis to allege knowing and purposeful violations of shareholder plans and intentionally fraudulent public disclosures," and these alleged facts *both* raised a reason to doubt the disinterestedness of most or all of the board *and* indicated that the business judgment rule would not apply, Plaintiffs "provide[d] sufficient particularity in the pleading to survive a motion to dismiss for failure to make demand pursuant to Rule 23.1." *Ryan*, 918 A.2d 355. Further, the district court

erred when it engaged in extensive, fact-based examination and criticism of Plaintiffs' proffered statistical analysis, as well as criticism of the use of Merrill Lynch type analysis in general, in deciding the motion to dismiss. Delaware courts accept this type of analysis as sufficient to plead with particularity and attain exemption from the demand requirement, even where the analysis does not conclusively show that backdating in fact occurred. *Id.*

Plaintiffs' allegations should have been taken as true in the motion to dismiss context. *Brehm*, 746 A.2d at 255. Although the district court's careful, reasoned conclusions as to the merit of Plaintiff's allegations may ultimately prove correct, they exceeded the scope of the proper review at the present phase of the proceedings, and therefore resulted in an abuse of discretion.

**REVERSED and REMANDED.**

FILED

APR 26 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Lynch v. Rawls*, Case No. 09-17379

Judge N.R. SMITH dissenting,

On the second page of its opinion, the majority acknowledges that we review the district court's determination whether making a demand on the board of directors is futile for abuse of discretion. Then it fails to allow the district court such discretion, therefore failing to follow our court's standard of review. We are not allowed to substitute our judgment for that of the district court, but must only determine whether the district court's decision was based on "an erroneous legal standard or clearly erroneous findings of fact." *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1010 (9th Cir. 2010). Neither step of the inquiry occurred here. I therefore dissent.

The district court did not abuse its discretion by determining that Plaintiffs had not pleaded particular facts which plausibly showed a majority of the board either approved or received backdated stock options. In accordance with *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), Plaintiffs' allegations that the directors were not independent must not only be possible—the allegations must be plausible. When reviewing a motion to dismiss, a court must accept factual allegations as true and draw reasonable inferences in favor of the Plaintiffs. *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000). However, a court is "not required to accept as true

1

conclusory allegations which are contradicted by documents referred to in the complaint" or "that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). That is the exact circumstance here.

1. Although "Plaintiffs 'point[ed] to specific grants, specific language in option plans, specific public disclosures,'" Majority at 6, the pleading is insufficient to make the allegations plausible. "Plaintiffs are not entitled to pick and choose which of defendants' statements in public documents favor them and have all others ignored."[1] *In re CNET Networks, Inc. Shareholder Derivative Litig.*, 483 F. Supp. 2d 947, 966 (N.D. Cal. 2007); *see also United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (noting that the rule of completeness in Federal Rule of Evidence 106 requires admission of the whole document when a portion would lead to misunderstanding or distortion).

---

[1] *Williamson v. United States*, cited by the majority, is distinguishable. 512 U.S. 594, 600 (1994). *Williamson* did not address plausibility or a motion to dismiss, but instead involved the interpretation of the hearsay exception for statements against interest. *Id.* at 599-600. Further, unlike *Williamson*, the conclusions in the 10-K report were not those of individuals facing potential prosecution. Instead, the independent Investigation Team concluded that while 105 of 151 grants did need to be restated, no grants made to directors needed restating. ER 195. While a potentially liable party has motive to make false "self-exculpatory statements," that is not true of independent third parties not facing liability.

2

Here, Plaintiffs' allegations that the directors received backdated grants or that directors (other than Rawls and Ferguson) approved backdated grants contradict the same 10-K report on which Plaintiffs purport to rely. The district court was not required to accept the 10-K report as true. *See* Majority at 4, n.1. However, the district court was also not required to accept the allegations of the Complaint as true, when those allegations were contradicted by the 10-K report. *Sprewell*, 266 F.3d at 988. Instead, the district court could "draw on its judicial experience and common sense" in evaluating the plausibility of the Complaint when contradicted by other records. *See Iqbal*, 129 S. Ct. at 1950.

Contrary to Plaintiffs' allegations, the 10-K report of the investigation (conducted by independent legal counsel and forensic accountants) concluded that no director grants needed to be restated because of an erroneous recording date. It identified several grants made by Rawls that appeared to have been backdated. It also acknowledged the grant date for one officer grant (approved by Ferguson) was changed to a more advantageous date (the April 23, 2003 grant). However, the report concluded that all other errors in grant dates occurred only because of process related deficiencies. The report then explained these deficiencies in detail. While a court need not accept this conclusion as true, under *Iqbal*, it may consider it as an alternative explanation more plausible than Plaintiffs' allegations. 129 S.

3

Ct. at 1951-52.

This backdating issue arises because the stock option plan, while requiring that options be priced equal to the market price on the effective date, does not "set forth the fixed recording price and date," Majority at 5, or define the effective date. Thus one cannot simply conclude that, if the date were wrong, it must have been changed knowingly. Majority at 5. The effective date can only be established in reference to SEC accounting standards—and the report concluded that key personnel lacked an adequate understanding of those standards. On this basis, the investigators concluded that there was no malfeasance on the part of company officials.

2. The district court did not abuse its discretion in concluding, in accordance with the documents on which Plaintiffs' complaint relies, that Plaintiffs had plausibly alleged only that Rawls and Ferguson had backdated stock options. Plaintiffs are entitled to all reasonable inferences, but it is not reasonable to infer that, because two directors backdated grants, other directors (several of whom were not on the board when those backdated grants were made) also backdated stock options. The district court correctly recognized that membership on a committee is an insufficient basis for imputing knowledge of one director to others. *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007). Thus, Plaintiffs have not shown

4

that the Audit Committee members would be liable for signing false statements, because they have not alleged facts showing the committee members knew the statements were false.

3. The district court did not abuse its discretion in considering the "obvious alternative explanation" that the allegedly backdated grants were, as determined by forensic accountants and independent legal counsel, the result of process deficiencies. *See Iqbal*, 129 S. Ct. at 1951-52; *see also Desimone*, 924 A.2d at 942 (Finding that a three-day difference in grant date "seems more plausibly to have possibly resulted from the failure by advisors to get paperwork completed and signed in a timely way" than from an intent to backdate.).

4. The district court did not abuse its discretion by refusing to consider the Merrill Lynch-type analysis as evidence of backdating. Although several Delaware courts have used such statistical analyses, there is no case requiring the court to do so. *See Conrad v. Blank*, 940 A.2d 28, 40 n.30 (Del. Ch. 2007) (stating that "the court [was] not *persuaded* that it should ignore the plaintiff's study") (emphasis added). The district court noted several problems with the analysis which undermined its validity and justified its exclusion. For example, it noted that its assumption that "a 20-day movement continues for the entire year is unrealistic," the 20-day window was arbitrary, and the analysis differed from the

analysis used by Merrill Lynch in *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007). Contrary to the majority's explanation that the Merrill Lynch type analysis "calculates the annualized returns of option grants at twenty days after the grant," Majority at 5 n.2, this analysis calculated the returns twenty *trading* days (about 29 calendar days) after the grant and multiplied them by eighteen, yielding an "annualized return" that was really the return over nearly a year and a half. The district court did not err in excluding this analysis.

In conclusion, because the district court did not act contrary to law or rely on clearly erroneous facts, it did not abuse its discretion in dismissing the complaint for failing to plead demand futility.

6

# United States Court of Appeals for the Ninth Circuit

## Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings
(December 2009)

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

(1) A. **Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  ▶ A material point of fact or law was overlooked in the decision;
  ▶ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  ▶ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

B. **Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

- ▶ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
- ▶ The proceeding involves a question of exceptional importance; or
- ▶ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

(2) **Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

(3) **Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

(4) **Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at under *Forms*.
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at under *Forms*.

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**
- Please refer to the Rules of the United States Supreme Court at

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - West Publishing Company; 610 Opperman Drive; PO Box 64526; St. Paul, MN 55164-0526 (Attn: Kathy Blesener, Senior Editor);
  - and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

Form 10. Bill of Costs ............................................................................................................(Rev. 12-1-09)

# United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

**Note:** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

[　　　　　　　　] v. [　　　　　　　　] 9th Cir. No. [　　　]

The Clerk is requested to tax the following costs against: [　　　　　　　　]

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED Each Column Must Be Completed | | | | ALLOWED To Be Completed by the Clerk | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| Excerpt of Record | | | $ | $ | | | $ | $ |
| Opening Brief | | | $ | $ | | | $ | $ |
| Answering Brief | | | $ | $ | | | $ | $ |
| Reply Brief | | | $ | $ | | | $ | $ |
| Other** | | | $ | $ | | | $ | $ |
| | | | TOTAL: | $ | | | TOTAL: | $ |

\* Costs per page may not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* Other: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page.*

**Form 10. Bill of Costs - Continued**

I, [        ], swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [        ]

("s/" plus attorney's name if submitted electronically)

Date [        ]

Name of Counsel: [        ]

Attorney for: [        ]

---

(To Be Completed by the Clerk)

Date [        ]   Costs are taxed in the amount of $ [        ]

Clerk of Court

By: [        ], Deputy Clerk