ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
CHRISTOPHER M. WOOD (254908)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
cwood@rgrdlaw.com
        – and –
TRAVIS E. DOWNS III (148274)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
travisd@rgrdlaw.com

SAXENA WHITE P.A.
MAYA SAXENA
JOSEPH E. WHITE
2424 N. Federal Highway, Suite 257
Boca Raton, FL  33431
Telephone:  561/394-3399
561/394-3382 (fax)
msaxena@saxenawhite.com
jwhite@saxenawhite.com

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FINISAR CORP. DERIVATIVE LITIGATION | ) ) ) ) |
| This Document Relates To: | ) ) ) ) |
| ALL ACTIONS. | ) ) ) |

Master File No. C-06-07660-RMW-HRL

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DATE:          October 18, 2013
TIME:          9:00 a.m.
COURTROOM:  The Honorable
                       Ronald M. Whyte

869440_1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................2

II.     THE LITIGATION ...................................................................................................4

    A.      Commencement and Consolidation of the Federal Action .....................................4

    B.      The Motions to Dismiss the First Amended Consolidated Complaint in the
        Federal Action.........................................................................................................4

    C.      The Motions to Dismiss the Operative Complaint ..................................................5

    D.      The Ninth Circuit Appeal........................................................................................6

    E.      Post-Appeal Litigation ...........................................................................................6

    F.      The  Re-Submitted Motions to Dismiss the Operative Complaint ..........................7

    G.      The Federal Individual Defendants' Answers and Motions to Strike......................8

    H.      Discovery and Additional Pre-Trial Proceedings ...................................................8

    I.      Settlement Negotiations...........................................................................................8

    J.      Board of Directors' Approval of the Settlement upon Recommendation of
        Independent Directors.............................................................................................9

III.    THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE
    SETTLEMENT.........................................................................................................9

IV.     THE SETTLEMENT IS AN OUTSTANDING RESULT FOR FINISAR AND
    SHOULD BE APPROVED .....................................................................................10

    A.      The Risks of Establishing Liability.......................................................................13

    B.      The Settlement Was Negotiated by the Parties with a Thorough
        Understanding of the Strengths and Weaknesses of the Parties' Respective
        Positions................................................................................................................15

    C.      The Complexity, Expense, and Duration of Continued Litigation ........................17

    D.      The Experience and Views of Counsel Favor Approval ......................................18

V.      THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES
    SHOULD BE APPROVED .....................................................................................18

VI.     CONCLUSION.......................................................................................................21

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL          - i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984) ......................................................................................14

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................15

*Cohn v. Nelson,*
  375 F. Supp. 2d 844 (E.D. Mo. 2005).................................................................9, 17

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001).....................................................................................10

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,*
  661 F.2d 939 (9th Cir. 1981) .................................................................................10

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975)..............................................................................13, 15

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ...............................................................................................19

*In re AOL Time Warner S'holder Derivative Litig.,*
  No. 02 Civ. 6302(SWK), 2006 U.S. Dist. LEXIS 63260
  (S.D.N.Y. Sept. 6, 2006).........................................................................................10

*In re Apollo Grp., Inc. Sec. Litig.,*
  No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
  (D. Ariz. Aug. 4, 2008)...........................................................................................15

*In re Extreme Networks, Inc. S'holder Derivative Litig.,*
  No. C-07-02268-RMW, slip op. (N.D. Cal. July 15, 2011).....................................19

*In re F5 Networks, Inc. Derivative Litig.,*
  No. C06-794-RSL, slip op. (W.D. Wash. Jan. 6, 2011) ..........................................19

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) .............................................................................15, 17

*In re NVIDIA Corp. Derivative Litig.,*
  No. C-06-06110-SBA(JCS), 2009 U.S. Dist. LEXIS 24973
  (N.D. Cal. Mar. 18, 2009)............................................................................ *passim*

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL                    - ii -

**Page**

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA(JCS), slip op.
    (N.D. Cal. Dec. 22, 2008) ..........................................................................................12

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................................13

*In re Walt Disney Co. Derivative Litig.*,
    907 A.2d 693 (Del. Ch. 2005), *aff'd*,
    906 A.2d 27 (Del. 2006) ..............................................................................................14

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001).................................................................................19

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) .................................................................................13, 21

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970).....................................................................................................20

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. *passim*

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .........................................................................................10

*Unite Nat'l Ret. Fund v. Watts*,
    No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246
    (D.N.J. Oct. 28, 2005)............................................................................................12, 20

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
    Rule 23.1 .........................................................................................................................9
    Rule 23.1(c)......................................................................................................................9

**SECONDARY AUTHORITY**

Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements,
2012 Review and Analysis* ......................................................................................2, 11

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL                 - iii -

TO:      ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on October 18, 2013, at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs Robert Lynch, Lynn Short, Patricia Dubovi, City of Worcester Retirement System, Richard Sawczak, and James Rocco (on behalf of themselves and derivatively on behalf of Finisar Corporation) ("Federal Plaintiffs"), will move the Honorable Ronald M. Whyte, United States District Judge, at the United States District Court, Northern District of California, San Jose Division, 280 South First Street, Courtroom 6, San Jose, California 95113, to grant final approval of the proposed Settlement in the *In re Finisar Corp. Derivative Litigation* on the terms set forth in the Stipulation of Settlement dated June 26, 2013 ("Stipulation" or "Settlement"), which was previously filed with the Court.  Dkt. No. 205.  The Settlement resolves the derivative claims pending in this Court and the derivative action pending in the Superior Court of the State of California, County of Santa Clara ("State Action").  Together, the Federal Action and the State Action are referred to as the "Actions."

The Motion is based on the following Memorandum of Points and Authorities in Support of Motion for Final Approval of Derivative Settlement ("Memorandum"), the Stipulation, the Joint Declaration of Shawn A. Williams, Christopher M. Wood and Travis E. Downs III in Support of Final Approval of Derivative Settlement ("Joint Decl."), the Declaration of Jeffrey D. Light in Support of Motion for Final Approval of Derivative Settlement ("Light Decl."), the Declaration of Thomas E. Pardun in Support of Settlement of Derivative Litigation ("Pardun Decl.") (Dkt. No. 210), the Declaration of Professor Jesse M. Fried in Support of Derivative Settlement ("Fried Decl.") (Dkt. No. 208), the Declaration of Layn R. Phillips in Support of Approval of Derivative Settlement ("Phillips Decl.") (Dkt. No. 209), and such additional evidence or argument as may be required by the Court.

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL                   - 1 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This Memorandum is submitted in support of final approval of the Settlement of the derivative claims brought on behalf of Finisar Corporation ("Finisar" or the "Company") against certain of its current and former officers and directors.[1]  The Settlement represents an outstanding recovery for the Company and is the product of Plaintiffs' extensive investigation, prosecution and arm's-length negotiations with Finisar, acting by and through the Independent Directors of the Finisar Board of Directors ("Independent Directors"), and the Federal Individual Defendants, with the assistance of the Honorable Layn R. Phillips, a highly respected former Judge who has extensive experience in the mediation of complex shareholder litigation.  Phillips Decl., ¶¶2-3.

As a result of Plaintiffs' efforts, Finisar will receive substantial financial benefits as well as significant corporate governance reforms which will benefit Finisar and its shareholders for years to come.  First, upon final approval of the Settlement, Finisar will have received $15.75 million in cash, consisting of $15.5 million from the individual defendants' insurance carriers and $250,000 from the individual defendants themselves.  Additionally, upon final approval of the Settlement, Finisar will receive releases from the insurers regarding, among other things, claims for reimbursement of defense costs that were conditionally advanced under reservation of rights, thereby eliminating the risk of more costly claw-back claims.  Stipulation, ¶2.1.

The monetary recovery covers 100% of Finisar's losses of $2,600,000 that resulted from the exercise of mispriced options by employees, 100% of the approximately $3,800,000 in 409A and related taxes paid by Finisar as a result of mispriced options, and the majority of the losses incurred due to mispriced options related audit, SEC and NASDAQ inquires.  Pardun Decl., ¶4.  This recovery far exceeds the average recovery in shareholder litigation.  Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements, 2012 Review and Analysis*, at 8 (Cornerstone Research 2013) (settlements as a percentage of "estimated damages" averaged 17.3% in 2012).

---

[1]    All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation.

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL          - 2 -

Second, the Settlement also provides for a series of significant corporate governance reforms that confer additional substantial benefits upon Finisar.  Stipulation, ¶2.2; Fried Decl., ¶¶9, 32, 38.[2] These reform measures are not only specifically designed to address the governance shortcomings that contributed to the climate that gave rise to the option backdating alleged in the Actions, but will also significantly strengthen Finisar's corporate governance practices and internal controls generally, and provide substantial and lasting value to Finisar.  For example, the Settlement establishes proper procedures for the granting of stock options (which are directly responsive to the allegations of backdated options at Finisar) and measures designed to ensure that such conduct does not happen again.   In addition, the Settlement calls for the implementation of enhanced internal controls. Stipulation, ¶2.2.

These corporate governance enhancements confer a substantial benefit upon Finisar, and will provide that value to its shareholders for years to come.  *Id.*  As Harvard Law Professor Jesse M. Fried opines, the corporate governance reforms "provide substantial benefits to Finisar and its shareholders," and "could easily reach tens of millions of dollars, or more."  Fried Decl., ¶9.

In recognition of the substantial benefits bestowed upon the Company, Finisar, acting by and through the Independent Directors, has agreed to pay $6.3 million for Plaintiffs' Counsel's attorneys' fees and expenses.  Counsel for Plaintiffs and Finisar, with the assistance of Judge Phillips, agreed to the attorneys' fee and expense provision after the principal terms of the Settlement were agreed upon.  Phillips Decl., ¶8.

The Settlement, including the separately negotiated fee, is firmly supported by the Independent Directors of Finisar's Board of Directors ("Finisar Board").  Pardun Decl., ¶¶7-8 ("Mr. Gertel and I have concluded, in our business judgment, that the payments and other benefits of the settlement are fair and reasonable and in the best interests of Finisar. . . . Separately, Mr. Gertel and I monitored and reviewed the negotiations regarding payment of an attorneys fee to derivative plaintiff's counsel and have recommended to the Board, subject to Court approval, the negotiated

---

[2]     Professor Fried is a Professor of Law at Harvard Law School.  Before joining Harvard's faculty, he was a Professor of Law at U.C. Berkeley School of Law.  Professor Fried specializes in the fields of corporate governance and executive compensation.  Fried Decl., ¶¶1-3.

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL          - 3 -

1    payment of $6,300,00 to derivative plaintiff's counsel for fees and expenses, as fair and reasonable

2    to Finisar. . . .  and the Board has approved our recommendation.").

3        Given the outstanding result obtained for Finisar, Plaintiffs respectfully submit that the Court

4    should approve the Settlement, including the fee and expense amount negotiated between the parties.

5    **II.    THE LITIGATION**

6        **A.    Commencement and Consolidation of the Federal Action**

7        The first derivative action was filed on December 14, 2006 in the United States District Court

8    for the Northern District of California and was styled *Lynch v. Rawls, et al.*, Case No. C-06-07660-

9    RMW-HRL (N.D. Cal.).   Shortly thereafter, two additional actions were filed in this Court

10   containing  substantially  similar  allegations.[3]   On  January 22, 2007,  the Court  issued  an  order

11   ("Consolidation Order") consolidating the federal derivative actions ("Federal Action").   The

12   Federal Action alleges claims based on Finisar's stock option grants and related acts and practices

13   from November 11, 1999 through September 8, 2006.  Joint Decl., ¶¶9-11.

14       **B.    The Motions to Dismiss the First Amended Consolidated Complaint
             in the Federal Action**

15
16       On March 8, 2007, the Federal Plaintiffs filed an Amended Consolidated Verified

     Shareholder Derivative Complaint, and on July 12, 2007, the Federal Plaintiffs filed a First Amended
17
     Consolidated  Verified  Shareholder  Derivative  Complaint  ("First  Amended  Consolidated
18
     Complaint").  In the First Amended Consolidated Complaint, the Federal Plaintiffs asserted claims
19
     on behalf of Finisar against some or all of the Federal Individual Defendants for breach of fiduciary
20
     duty,  aiding  and  abetting  breach  of  fiduciary  duty,  abuse  of  control,  corporate  waste,  unjust
21
     enrichment, constructive fraud, gross mismanagement, rescission, misappropriation of information,
22
     breach of contract, and violations of the federal securities laws and California Corporations Code,
23
     and demanded an accounting.  Joint Decl., ¶¶12-14.
24
         On August 28, 2007, Finisar and the Federal Individual Defendants filed motions to dismiss
25
     the First Amended Consolidated Complaint, arguing, among other things, that the First Amended
26

27   ---
     [3]     These actions are *Short v. Rawls, et al.*, Case No. C-06-07661-RMW-HRL (N.D. Cal.), and
28   *City of Worcester Retirement System v. Rawls, et al.*, Case No. C-06-07848-RMW-HRL (N.D. Cal.).

1   Consolidated Complaint failed to adequately plead that a pre-suit demand upon the Finisar Board

2   was futile, and that the First Amended Consolidated Complaint failed to state any actionable claim

3   for relief.  On October 18, 2007, the Federal Plaintiffs filed Oppositions to the motions to dismiss the

4   First Amended Consolidated Complaint, arguing, among other things, that particularized facts set

5   forth in the First Amended Consolidated Complaint excused a pre-suit demand upon the Finisar

6   Board, and that the facts alleged stated claims for relief against each Federal Individual Defendant.

7   Joint Decl., ¶¶15-16.

8           On January 11, 2008, the Court, after hearing oral argument, issued an order granting Finisar

9   and the Federal Individual Defendants' motions to dismiss the First Amended Consolidated

10  Complaint based on its finding that the Federal Plaintiffs had failed to adequately allege that a pre-

11  suit demand on the Finisar Board would have been futile.  The Court also granted the Federal

12  Plaintiffs leave to file a further amended complaint.  The Court did not rule on the Federal Individual

13  Defendants' motions to dismiss the First Amended Consolidated Complaint for failure to state any

14  actionable claim for relief.  Joint Decl., ¶17.

15          **C.      The Motions to Dismiss the Operative Complaint**

16          On May 12, 2008, the Federal Plaintiffs filed a Second Amended Consolidated Verified

17  Shareholder Derivative Complaint, and on May 21, 2008, the Federal Plaintiffs filed a Supplemental

18  Second Amended Consolidated Verified Shareholder Derivative Complaint, which did not name Mr.

19  Lieb as a defendant ("Operative Complaint").  The Operative Complaint included, among other

20  things, additional facts alleging why a pre-suit demand upon the Finisar Board would have been

21  futile, and therefore, excused.  Joint Decl., ¶18.

22          On July 1, 2008, Finisar and the Federal Individual Defendants again moved to dismiss the

23  Federal Action, arguing, among other things, that the Operative Complaint failed to adequately plead

24  futility of demand, thereby justifying a dismissal of the Federal Action with prejudice.  They also

25  argued that, even if a pre-suit demand was futile, that the Federal Action still must be dismissed for

26  failure to state any claim for relief against any Federal Individual Defendant.  On August 19, 2008,

27  the Federal Plaintiffs filed Oppositions to the motions to dismiss, arguing, among other things, that

28  the Federal Action should not be dismissed as the facts pleaded in the Operative Complaint excused

1   a pre-suit demand on the Finisar Board, as well as stated actionable claims for relief under federal

2   and state laws against the Federal Individual Defendants.  Joint Decl., ¶¶19-20.

3          Thereafter, on September 22, 2009, the Court issued an order granting the motions to dismiss

4   the Operative Complaint with prejudice based on its finding that the Federal Plaintiffs had failed to

5   adequately allege that a pre-suit demand on the Finisar Board would have been futile.  The Court

6   entered judgment on the same date.  The Court did not rule on the Federal Individual Defendants'

7   motions to dismiss for failure to state any actionable claim for relief.  Joint Decl., ¶21.

8          **D.     The Ninth Circuit Appeal**

9          On October 22, 2009, the Federal Plaintiffs filed a notice of appeal with the United States

10  Court of Appeals for the Ninth Circuit ("Ninth Circuit Court").  On March 24, 2010, the Federal

11  Plaintiffs filed their Opening Brief with the Ninth Circuit Court and argued, among other things, that

12  the dismissal of the Federal Action was contrary to law and should be reversed.  On May 19, 2010,

13  Finisar and the Federal Individual Defendants filed their Answering Brief and argued, among other

14  things, in support of the dismissal of the Federal Action, that the dismissal of the Federal Action was

15  required by controlling law and that the Court's decision should be affirmed.  The Ninth Circuit

16  Court heard oral argument in San Francisco, California.  On April 26, 2011, the Ninth Circuit Court

17  issued an order reversing the dismissal of the Federal Action ("Remand Order").  The Ninth Circuit

18  Court concluded that the Federal Plaintiffs' allegations were sufficient to excuse a pre-suit demand

19  on the Finisar Board.  Joint Decl., ¶¶22-24.

20         On May 17, 2011, Finisar and the Federal Individual Defendants filed a petition for rehearing

21  *en banc*, arguing that the Ninth Circuit Court's Remand Order was contrary to law.  On July 8, 2011,

22  the Ninth Circuit Court issued an order denying the petition for rehearing *en banc*.  Joint Decl., ¶25.

23         **E.     Post-Appeal Litigation**

24         On August 19, 2011, the parties to the Federal Action requested a Case Management

25  Conference, which the Court granted on August 30, 2011.  On September 16, 2011, the Court

26  conducted a Case Management Conference with the parties to the Federal Action.  During the Case

27  Management Conference, the parties addressed with the Court, among other things, whether the

28  automatic discovery stay under the Private Securities Litigation Reform Act of 1995 ("PSLRA")

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL            - 6 -

1  should remain in place while the Federal Individual Defendants challenged the claims for relief

2  asserted in the Operative Complaint.  Following the Case Management Conference, on October 7,

3  2011, the Federal Plaintiffs submitted a letter brief in support of lifting the discovery stay, and on

4  October 14, 2011, the Federal Individual Defendants filed a letter brief in support of continuing the

5  discovery stay.  On February 24, 2012, the Court issued an order leaving the discovery stay in place.

6  Joint Decl., ¶¶26-28.

7       **F.**     **The  Re-Submitted Motions to Dismiss the Operative Complaint**

8       On March 15, 2012, the Federal Individual Defendants re-filed motions to dismiss the

9  Operative Complaint for failure to state a claim for relief, arguing, among other things, that the

10  Federal Plaintiffs' Operative Complaint had failed to state claims for violations of the federal

11  securities laws and that the Federal Plaintiffs' state law claims for breach of fiduciary duty and

12  related relief also failed under applicable California and/or Delaware law.  On May 3, 2012, the

13  Federal Plaintiffs filed an Opposition to the Federal Individual Defendants' motions to dismiss, but

14  did not oppose the motion as to certain of the Federal Individual Defendants and did not oppose a

15  separate motion to dismiss filed by the late Jan Lipson.  The Federal Plaintiffs argued, among other

16  things, that the facts pleaded in the Operative Complaint stated claims for violations of the federal

17  securities laws and claims for breach of fiduciary duty and related relief under California and

18  Delaware corporation law.  Joint Decl., ¶¶29-30.

19       The Court held oral argument on June 29, 2012.  On July 12, 2012, the Court issued an order

20  granting in part and denying in part the Federal Individual Defendants' motions to dismiss.  The

21  Court's July 12, 2012 Order dismissed with prejudice all claims against defendants David Buse,

22  John Drury, Mark J. Farley, Jan Lipson, Joseph A. Young, and Harold E. Hughes, and dismissed

23  without prejudice all claims against defendants David C. Fries, Gregory H. Olsen, Robert N.

24  Stephens, and Dominique Trempont, granting the Federal Plaintiffs 30 days to amend.  The Federal

25  Plaintiffs did not file a subsequent amended complaint.  Joint Decl., ¶¶30-31.

26       On August 31, 2012, the Court conducted a further Case Management Conference and,

27  among other things, entered an order setting a discovery and pre-trial schedule.  Joint Decl., ¶32.

28

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL    - 7 -

### G. The Federal Individual Defendants' Answers and Motions to Strike

On November 2, 2012, certain of the Federal Individual Defendants filed Answers to the Operative Complaint ("Answers"). After reviewing the Answers, on November 6, 2012, the Federal Plaintiffs notified the Federal Individual Defendants who had filed Answers in writing of their intention to file motions to strike certain of the affirmative defenses contained in the Answers. Thereafter, the parties to the Federal Action met and conferred regarding a schedule for the filing of the motions to strike. Joint Decl., ¶33.

### H. Discovery and Additional Pre-Trial Proceedings

In the Fall of 2012, discovery commenced in the Federal Action. In October 2012, the Federal Plaintiffs served written discovery requests on the Federal Individual Defendants who remained in the Federal Action. The Federal Plaintiffs also sought discovery of certain documents and information from Finisar and its auditors and lawyers. In November 2012 and January 2013, the remaining Federal Individual Defendants served written responses and objections to the Federal Plaintiffs' discovery requests. Finisar and its auditors and lawyers did likewise. In December 2012, Finisar served written discovery requests on the Federal Plaintiffs seeking certain documents and information. In January 2013, the Federal Plaintiffs served responses and objections to Finisar's discovery requests. Upon the receipt of discovery responses and objections, the meet and confer process ensued. Joint Decl., ¶¶34-36.

### I. Settlement Negotiations

While discovery and pre-trial preparation continued in the Federal Action, between September 2012 and March 2013, representatives of the Settling Parties engaged in a formal mediation process before Judge Phillips, among other attempts at settlement. All of the parties participated in an all-day, in-person mediation session on October 11, 2012 in East Palo Alto, California, and after additional negotiations among Plaintiffs, the Settling Defendants, and Finisar, by and through its Independent Directors, on March 22, 2013, the Settling Parties reached an agreement-in-principle for the resolution of the Federal Action and the State Action. Joint Decl., ¶¶38-40.

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL      - 8 -

**J.**     **Board of Directors' Approval of the Settlement upon Recommendation of Independent Directors**

On June 17, 2013, the current Finisar Board, on behalf of Finisar and upon the recommendation of the Independent Directors, exercising their business judgment, unanimously approved the Settlement and each of its terms, as set forth in the Stipulation, as in the best interest of Finisar and its shareholders. Pardun Decl., ¶¶7-8. More specifically, the Independent Directors, in their business judgment, concluded the proposed Settlement, and each of its terms, is in the best interest of Finisar and its shareholders.

> Mr. Gertel and I have concluded, in our business judgment, that the payments and other benefits of the settlement are fair and reasonable and in the best interests of Finisar. . . . Separately, Mr. Gertel and I monitored and reviewed the negotiations regarding payment of an attorneys fee to derivative plaintiff's counsel and have recommended to the Board, subject to Court approval, the negotiated payment of $6,300,00 to derivative plaintiff's counsel for fees and expenses, as fair and reasonable to Finisar . . . . and the Board has approved our recommendation.

Pardun Decl., ¶¶7-8.

## III.     THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE SETTLEMENT

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS), 2009 U.S. Dist. LEXIS 24973, at *6 (N.D. Cal. Mar. 18, 2009) (Light Decl., Ex. A). The "'[s]ettlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable.'"'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citations omitted).

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c).

The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement, some of which are applicable to a derivative settlement:

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL                    - 9 -

1    The district court's ultimate determination will necessarily involve a balancing of
     several factors which may include, among others, some or all of the following: the
2    strength of plaintiffs' case; the risk, expense, complexity, and likely duration of
     further litigation; the risk of maintaining class action status throughout the trial; the
3    amount offered in settlement; the extent of discovery completed, and the stage of the
     proceedings; the experience and views of counsel; the presence of a governmental
4    participant; and the reaction of the class members to the proposed settlement.

5    *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Torrisi v.*

6    *Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).   The Ninth Circuit, however, has

7    cautioned that:

8        [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for
         trial on the merits.  Neither the trial court nor this court is to reach any ultimate
9        conclusions on the contested issues of fact and law which underlie the merits of the
         dispute, for it is the very uncertainty of outcome in litigation and avoidance of
10       wasteful and expensive litigation that induce consensual settlements.  The proposed
         settlement is not to be judged against a hypothetical or speculative measure of what
11       **might** have been achieved by the negotiators.

12   *Officers for Justice*, 688 F.2d at 625 (emphasis in original).

13       The district court must exercise "sound discretion" in approving a settlement.  *Ellis v. Naval*

14   *Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*,

15   8 F.3d at 1375.  Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise

16   a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

17   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

18   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

19   whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625; *see*

20   *also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302(SWK), 2006 U.S. Dist.

21   LEXIS 63260, at *8-*9 (S.D.N.Y. Sept. 6, 2006) ("'a court-appointed mediator's involvement in . . .

22   settlement negotiations helps ensure that the proceedings were free of collusion and undue

23   pressure'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

24   **IV.    THE SETTLEMENT IS AN OUTSTANDING RESULT FOR FINISAR
            AND SHOULD BE APPROVED**
25
         As a result of settlement negotiations among counsel for the Plaintiffs, Finisar, acting by and
26
     through the Independent Directors, and the Federal Individual Defendants, with the assistance of
27
     Judge Phillips, the Settling Parties have agreed to a resolution that provides substantial benefits to
28

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL                    - 10 -

1   Finisar.  The Settlement is comprised of several elements, each of which provides a substantial

2   benefit to Finisar, on whose behalf the Actions were brought.

3       First, upon final approval of the Settlement, Finisar will have received $15.75 million.

4   Stipulation, ¶2.1.  This recovery covers 100% of Finisar's losses of $2,600,000 that resulted from the

5   exercise of mispriced options by employees, 100% of the approximately $3,800,000 in 409A and

6   related taxes paid by Finisar as a result of mispriced options, and the majority of the losses due to

7   mispriced options related audit, SEC and NASDAQ inquires.  Pardun Decl., ¶4.  The proposed

8   Settlement far exceeds the average recovery in shareholder litigation.  Ellen M. Ryan, Laura E.

9   Simmons, *Securities Class Action Settlements, 2012 Review and Analysis*, at 8 (Cornerstone

10  Research 2013) (settlements as a percentage of "estimated damages" averaged 17.3% in 2012).

11  Additionally, upon final approval of the Settlement, Finisar will receive releases from defendants'

12  insurance carriers regarding, among other things, claims for reimbursement of defense costs that

13  were conditionally advanced under reservation of rights, thereby eliminating the risk of future costly

14  claw-back claims.  Stipulation, ¶2.1.

15      Second, and just as significant, the Settlement provides that Finisar will implement and

16  maintain for at least five years significant corporate governance and internal control measures that

17  the parties believe will increase the value of Finisar.  Several of the corporate governance reforms

18  obtained here are regularly sought by shareholders whose requests are usually denied.  A number of

19  these corporate governance measures are substantial procedural reforms relating to stock option

20  granting which will prevent the recurrence of the type of conduct alleged in the Actions.  These

21  corporate governance reforms "benefits Finisar and its shareholders by reducing executives' ability

22  to secretly divert value from the company [through option grant backdating]."  Fried Decl., ¶22.

23      Plaintiffs also secured significant governance reforms which will give Finisar directors

24  greater incentive and ability to represent public shareholders' interests.  These governance reforms

25  yield positive changes in many areas of Finisar's operations and create long-lasting effects on Finisar

26  that go far beyond its option granting practices.  As Professor Fried opines:

27          In my view, a diligent and good faith implementation of the option-grant measures
            described above should substantially reduce the likelihood of – if not prevent – the

28

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL          - 11 -

1    future backdating of executive and non-executive option grants by either executives
2    or directors.

                              *       *       *

3    In addition to reducing the likelihood of the future backdating of executive and non-
4    executive option grants, the CG measures will benefit Finisar and its shareholders by
5    giving Finisar's directors greater ability and incentive to represent public
     shareholders' interests. . . .

6    Fried Decl., ¶¶22-23.[4]

7         Therefore, Plaintiffs not only resolved the stock option backdating issues at Finisar, but also

8    obtained significant reforms which leave Finisar as a better governed company with stronger internal

9    controls and greater independent oversight.   As Judge Armstrong concluded in the *NVIDIA*

10   derivative backdating litigation, "[a]s corporate debacles such as Enron, Tyco and WorldCom

11   demonstrate, strong corporate governance is fundamental to the economic well-being and success of

12   a corporation.  Indeed, '[c]ourts have recognized that corporate governance reforms such as those

13   achieved here provide valuable benefits to public companies.'"   *In re NVIDIA Corp. Derivative*

14   *Litig.*, No. C-06-06110-SBA(JCS), slip op. at 4 (N.D. Cal. Dec. 22, 2008) (citation omitted) (Light

15   Decl., Ex. B); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS

16   26246, at *18 (D.N.J. Oct. 28, 2005) (court in approving settlement recognized "the great benefit

17   conferred upon [the company] as a result of the new corporate governance principles provided for in

18   settlement agreement" that "will serve to prevent and protect [the company] from the reoccurrence

19   of certain alleged wrongdoings").

20        Significantly, if litigation continued, Finisar's recovery at trial would be limited to monetary

21   damages or equitable relief, therefore foreclosing Plaintiffs' ability to seek the corporate reforms

22   obtained here.  The corporate governance reforms may, in fact, be more valuable to the Company

23   and its shareholders than any potential monetary award or equitable relief obtained after trial, post-

24

---

25   [4]    Corporate governance improvements are regularly sought by institutional investors in
     connection with the prosecution and/or resolution of shareholder litigation.  The implementation of
26   strong corporate governance practices is perceived by sophisticated institutional investors to
     substantially enhance the value of corporations which adopt such practices.  The end result is that the
27   adoption of such improvements often yields substantially increased market capitalization for the
     companies implementing them. *See generally Investor Opinion Survey on Corporate Governance*
28   (McKinsey & Company June 2000) [www.oecd.org/dataoecd/56/7/1922101.pdf].

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL            - 12 -

1   trial motions, and appeals. *Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("effects of

2   the suit on the functioning of the corporation may have a substantially greater economic impact on it,

3   both long- and short-term, than the dollar amount of any likely judgment").

4         The Settlement's substantial governance reforms permit Finisar not only to offer more

5   transparency to shareholders, but also will help the Company avoid future litigation. Further, the

6   financial benefits to the Company are highly significant and represent one of the strongest recoveries

7   in a stock option backdating action in this District. Together, the governance reforms and financial

8   benefits achieved through the Actions are substantial and will provide ongoing benefits to the

9   Company for years after the Settlement is approved. In sum, the Settlement confers substantial

10  benefits upon Finisar and is an outstanding resolution for Finisar of a case of substantial complexity

11  and costs. Phillips Decl., ¶7; Fried Decl., ¶38; Pardun Decl., ¶¶7-8.

12        **A.    The Risks of Establishing Liability**

13        In assessing the fairness, reasonableness, and adequacy of a settlement, the court should

14  balance the benefits of the settlement against the continuing risks of litigation. *Girsh v. Jepson*, 521

15  F.2d 153, 157 (3d Cir. 1975); *Officers for Justice*, 688 F.2d at 625. There is no question that

16  derivative actions are complex and fraught with risk. Indeed, the Ninth Circuit, in affirming the

17  district court's approval of a settlement in a derivative action, noted that "the odds of winning [a]

18  derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *In re*

19  *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This case was no different. As Judge

20  Phillips notes: "the settlement reached represents a considered judgment by plaintiff's counsel,

21  Robbins Geller Rudman & Dowd LLP, who are among the most capable and experienced lawyers in

22  the country and who took on a risky and complicated case, including a successful appeal to the Ninth

23  Circuit, and that the proposed settlement is fair and reasonable." Phillips Decl., ¶6.

24        Although Plaintiffs believe that the claims asserted in the Actions were meritorious, liability

25  was by no means assured. Had Plaintiffs continued to litigate, there was a risk that they would not

26  have been successful on Finisar's and/or the Federal Individual Defendants' pre-trial motions

27  designed to eliminate or curtail the derivative claims. Joint Decl., ¶¶48-52.

28

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL          - 13 -

1    Even if Plaintiffs were successful, continued litigation would be extremely complex, costly,

2    and of substantial duration.  Document discovery would need to be completed, depositions would

3    need to be taken, experts would need to be designated, and expert discovery conducted.  The Federal

4    Individual Defendants' expected motions for summary judgment would have to be briefed and

5    argued and a trial would have to be held.  Indeed, significant risks remained in getting past the

6    Federal Individual Defendants' anticipated motions for summary judgment and obtaining a favorable

7    judgment after trial.  *Id.*

8    Further, to prevail at trial, Plaintiffs would have had to overcome the potential arguments that

9    the protections afforded the Federal Individual Defendants under the so-called "business judgment

10   rule" applied.  Undoubtedly, the Federal Individual Defendants would have sought the application of

11   the business judgment rule's protections with respect to many of the acts challenged by Plaintiffs.

12   *See Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).  Although referred to as a "rule," the idea of

13   "business judgment protection" for directors is more akin to a broad doctrine or concept, and it is

14   perhaps, the fundamental precept of corporate law.  *See generally In re Walt Disney Co. Derivative*

15   *Litig.*, 907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).  While the business judgment

16   rule (and the protections it affords directors) has been articulated in slightly varied ways (and has

17   taken varied forms), it essentially stands for the proposition that there is a strong presumption that, in

18   making a disinterested business decision, the directors of a corporation acted on an informed basis,

19   in good faith, and with the honest belief that the action taken was in the best interests of the

20   corporation.  *Id.* at 746-47.  Plaintiffs also faced the likelihood that the Federal Individual

21   Defendants would assert that Finisar's certificate of incorporation contained exculpatory provisions

22   which shielded them from potential liability.  While Plaintiffs believed that they had strong

23   arguments to overcome the protections afforded by the business judgment rule and Finisar's

24   "liability raincoat" provisions with respect to many of the acts challenged in the Actions, the

25   prospect that the Federal Individual Defendants could have been shielded by these protective

26   umbrellas made establishing liability in the Actions uncertain.  Joint Decl., ¶¶48-52.

27   Based upon the record and applicable law, it is therefore clear that there were serious risks in

28   overcoming potential defenses and in establishing liability.  And even if liability was established, the

1   amount of recoverable damages would still have posed significant issues and would have been

2   subject to further litigation.  Thus, as opposed to the very real risk of no recovery at all for the

3   Company, the Settlement guarantees an outstanding result with $15.75 million in financial benefits

4   to the Company and the implementation of valuable corporate governance enhancements that could

5   not have been obtained if the Actions proceeded to trial.  Accordingly, the Settlement is likely the

6   best possible result and more valuable to the Company and its shareholders than a judgment

7   achieved after a successful trial.

8          Lastly, if Plaintiffs were successful at trial there was no guarantee that the judgment would

9   ultimately be sustained on appeal or by the trial court.  For example, in *In re Apollo Grp., Inc. Sec.*

10  *Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court

11  on a motion for judgment as a matter of law, overturned a jury verdict of $277 million in favor of

12  shareholders based on insufficient evidence presented at trial to establish loss causation.  Add to

13  these post-trial risks the difficulty and unpredictability of a lengthy and complex trial – where

14  witnesses could suddenly become unavailable or the fact-finder could react to the evidence in

15  unforeseen ways – and the benefits of the Settlement become all the more apparent.

16      **B.      The Settlement Was Negotiated by the Parties with a Thorough**
                **Understanding of the Strengths and Weaknesses of the Parties'**
17              **Respective Positions**

18          The stage of the proceedings and the amount of discovery completed is another factor which

19  courts consider in determining the fairness, reasonableness, and adequacy of a settlement.  *Officers*

20  *for Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-

21  17 (N.D. Cal. 1979).  Notwithstanding nearly seven years since its commencement, the Settlement

22  comes at a relatively early stage in the proceedings, thus avoiding the potential for the expense of

23  protracted discovery and trial preparation, the cost of time and attention diverted from the day-to-day

24  business operations of the Company, and of course the burden to the Court of protracted and

25  complex litigation.  Ninth Circuit law is quite clear that "'"formal discovery is not a necessary ticket

26  to the bargaining table" where the parties have sufficient information to make an informed decision

27  about settlement.'"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations

28  omitted).  Nevertheless, both the knowledge of Plaintiffs' Counsel and the proceedings themselves

1    have reached a stage where an intelligent evaluation of the Actions and the propriety of settlement

2    can be made.

3         Before the filing of the first complaint and continuing thereafter, Plaintiffs' Counsel

4    conducted an extensive investigation of the allegations asserted in the Actions.  Plaintiffs' Counsel

5    consulted with experts having specialized knowledge in the areas of options backdating, accounting

6    and corporate governance; reviewed and analyzed voluminous documents, including financial

7    reports, press releases, and SEC filings concerning Finisar's stock option granting practices and

8    other accounting and financial reporting issues; and reviewed and analyzed thousands of pages of

9    documents regarding Finisar's historical stock option granting practices that were produced by

10   defendants during the proceedings.  In addition, "[t]he mediation process involved extensive analysis

11   of the parties' positions including the merits of plaintiffs' stock option backdating claims, the orders

12   of this Court and the United States Court of Appeals for the Ninth Circuit on Finisar's motions to

13   dismiss, as well as the individual defendants' potential defenses." Phillips Decl., ¶5.

14        Furthermore, Plaintiffs' Counsel have been involved in many option backdating cases in this

15   District and across the country, and are intimately familiar with the legal and factual issues

16   associated with these claims.  Because of their involvement in many cases with similar issues,

17   Plaintiffs' Counsel not only reviewed and analyzed Finisar's option granting documents, but also

18   have reviewed and analyzed the internal option granting documents for many other companies.  As a

19   result, Plaintiffs' Counsel was in an excellent position to analyze Finisar's option granting practices

20   in the context of similar situations with other companies.

21        Here, Plaintiffs' Counsel's extensive investigation, which included the review of thousands

22   of pages of internal Finisar documents, the arm's-length settlement discussions, as well as counsel's

23   past experience in litigating similar actions, provided Plaintiffs not only with a clear picture of the

24   strengths and weaknesses of the Actions, but also of the sufficiency of the legal and factual defenses

25   that the Federal Individual Defendants would raise if litigation were to continue.  Having enough

26   information to properly evaluate the claims and defenses to be asserted, Plaintiffs have managed to

27   resolve the Actions on a highly favorable basis to the Company and its shareholders without the

28   substantial expense, risk, delay, and uncertainty of continued litigation.  Thus, the Settling Parties

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL       - 16 -

1  reached an agreement to settle the Actions at a point when they had an adequate understanding of the

2  legal and factual issues surrounding the case. *Mego Fin.*, 213 F.3d at 459.

3      **C.    The Complexity, Expense, and Duration of Continued Litigation**

4          Another factor militating in favor of the settlement is the complexity, expense, and likely

5  duration of the litigation. *Officers for Justice*, 688 F.2d at 625; *Cohn*, 375 F. Supp. 2d at 859.

6  Shareholder derivative actions are notoriously complicated actions that involve convoluted legal and

7  factual issues that can be litigated to a conclusion on the merits only at great expense over an

8  extended period of time. *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *6-*7 (same) (Light Decl., Ex.

9  A); *Cohn*, 375 F. Supp. 2d at 852 ("'Settlements of shareholder derivative actions are particularly

10  favored because such litigation "is notoriously difficult and unpredictable."'") (citations omitted).

11  The Actions would not have been an exception to this rule.

12          If not for this Settlement, the Actions would have continued to be fiercely contested by the

13  parties. The alleged wrongdoing took place beginning in the 1990s. Discovering all of the relevant

14  documents and witnesses would have proved difficult. Continued litigation would also be complex,

15  costly, and of substantial duration. Although Federal Plaintiffs obtained substantial amounts of

16  information during the early stages of the litigation, additional formal document discovery would

17  need to be commenced and completed, depositions would have to be taken, experts would need to be

18  designated and expert discovery conducted, the Federal Individual Defendants' expected motions for

19  summary judgment would have to be briefed and argued, and a trial could occupy attorneys on both

20  sides and the Court for weeks. Moreover, any judgment favorable to Plaintiffs would likely be the

21  subject of post-trial motions and appeal, which would prolong the case for years with the ultimate

22  outcome uncertain.

23          The Settlement provides immediate and substantial benefits to Finisar and its shareholders

24  and avoids years of delay, added expense, and uncertainty. A prolonged period of pretrial

25  proceedings and a lengthy and uncertain trial would not serve the interest of the Company and its

26  shareholders in light of the substantial benefits provided by the Settlement. Thus, the prospect of

27  continued protracted expensive and uncertain litigation strongly supports approval of the Settlement.

28

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL    - 17 -

### D.     The Experience and Views of Counsel Favor Approval

Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement – here, Finisar.  *Officers for Justice*, 688 F.2d at 625.  Plaintiffs and Finisar, acting by and through the Independent Directors, and the counsel for each, have independently considered the Settlement and all agree that it is in the best interest of Finisar and its shareholders.  Joint Decl., ¶54; Pardun Decl., ¶¶7-8.

Here, counsel for Plaintiffs not only have extensive experience in the area of shareholder representative litigation but have been at the forefront of investigating stock option abuses and are involved in the prosecution of numerous actions on behalf of shareholders alleging stock option abuses in courts nationwide.  As a result of counsel's unparalleled experience in these types of cases, counsel for Plaintiffs have a unique insight into the legal and factual issues presented.  Counsel used that expertise and experience to effectively and efficiently prosecute the Actions and reach an excellent result for Finisar and its shareholders.  Phillips Decl., ¶6.

## V.     THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

Plaintiffs' Counsel's efforts in prosecuting the Actions on behalf of the Company and negotiating the Settlement have conferred $15.75 million in financial benefits and valuable corporate governance reforms upon Finisar.  Stipulation, ¶¶2.1-2.2; Fried Decl., ¶¶9, 38; Pardun Decl., ¶¶7-8. In recognition of these substantial benefits, Finisar, acting by and through the Independent Directors, has agreed to pay $6.3 million in cash for Plaintiffs' Counsel's attorneys' fees and expenses. Stipulation, ¶5.1.  Plaintiffs' Counsel and Finisar agreed to such an amount only after the principal terms of the Settlement were agreed upon.  As Judge Phillips states, "I believe that the agreed attorneys' fee and expenses amount was negotiated by the parties in good faith, is fair and reasonable in light of the substantial benefits conferred, and is consistent with fee provisions in similar complex, large shareholder derivative stock option backdating settlements."  Phillips Decl., ¶8; *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *11-*14 (approving $7.25 million negotiated fee provision in connection with $15.8 million stock option backdating derivative settlement) (Light Decl., Ex. A).

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL                                      - 18 -

1    The United States Supreme Court has endorsed negotiated resolution of attorneys' fee issues

2  as the ideal toward which litigants should strive.  In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983),

3  the Supreme Court stated: "A request for attorney's fees should not result in a second major

4  litigation.  Ideally, of course, litigants will settle the amount of a fee."  Similarly, the Ninth Circuit

5  has stated that the "court's intrusion upon what is otherwise a private consensual agreement

6  negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

7  reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

8  between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

9  adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.[5]

10    Accordingly, courts within the Ninth Circuit have approved this type of arms' length

11  negotiation and deferred to corporate directors' business judgment as to the amount of attorneys'

12  fees in stock option backdating settlements.  *In re Extreme Networks, Inc. S'holder Derivative Litig.*,

13  No. C-07-02268-RMW, April 22, 2011 Hearing Transcript at 8:6-10:2, 12:3-9 (N.D. Cal.)

14  (preliminarily approving stock option backdating settlement); *In re Extreme Networks*, No. C-07-

15  02268-RMW, slip op. (N.D. Cal. July 15, 2011) (approving separately negotiated attorneys' fee

16  negotiated by independent directors with the aid of counsel); *NVIDIA*, 2009 U.S. Dist. LEXIS 24973

17  (N.D. Cal. July 17, 2009); *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794-RSL, slip op.

18  (W.D. Wash. Jan. 6, 2011) (same); Light Decl., Exs. A, C-E.

19    Nevertheless, over the course of seven years of litigation, Plaintiffs' Counsel expended

20  approximately 3,900 hours prosecuting the derivative claims from inception to settlement, including

21  an appeal to the Ninth Circuit Court of Appeals.  In prosecuting Finisar's derivative claims to

22  fruition, Plaintiffs' Counsel incurred approximately time and expenses of $1,954,937 and $212,193,

23  respectively.  Although these metrics were not a part of the attorneys' fee and expense negotiations,

24  they nevertheless confirm the vigor with which Plaintiffs' Counsel approached this task.  Once

25  engaged to prosecute Finisar's derivative claims, Plaintiffs' Counsel never wavered in their duty to

26

27  _____

[5]    Where, as here, there is no evidence of collusion and no detriment to the parties, the court
28  should give "substantial weight to a negotiated fee amount."  *Ingram v. Coca-Cola Co.*, 200 F.R.D.
685, 695 (N.D. Ga. 2001); Phillips Decl., ¶8.

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL                 - 19 -

1    vindicate Finisar's interests against its wayward fiduciaries.  And, by every objective measure,

2    Plaintiffs' Counsel succeeded.  They recovered 100% of Finisar's losses that resulted from the

3    exercise of mispriced options by employees, 100% in 409A and related taxes paid by Finisar as a

4    result of mispriced options, and the majority of the losses incurred due to mispriced options related

5    audit, SEC and NASDAQ inquires.  Stipulation, ¶2.1; Pardun Decl., ¶4.

6            Moreover, under the "substantial benefit" doctrine, counsel who prosecute a shareholders'

7    derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees

8    and costs.  *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *12 (Light Decl., Ex. A).  In *Mills v. Elec.*

9    *Auto-Lite Co.*, 396 U.S. 375 (1970), the United States Supreme Court stated that "an increasing

10   number of lower courts have acknowledged that a corporation may receive a 'substantial benefit'

11   from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit

12   is pecuniary in nature," and that "regardless of the relief granted, private stockholders' actions of this

13   sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an

14   important means of enforcement of the proxy statute."  *Id.* at 395, 396 (citations omitted); *Unite*

15   *Nat'l*, 2005 U.S. Dist. LEXIS 26246, at *18 (awarding $9.2 million based on "the great benefit

16   conferred upon [the company] as a result of the new corporate governance principles provided for in

17   the settlement agreement").

18           Here again, the separately negotiated fee provision was not based on Plaintiffs' Counsel's

19   lodestar.  Instead, as other corporate directors have done when negotiating the amount of attorneys'

20   fees in a stock option backdating settlements, the Independent Directors of Finisar, with the aid of

21   competent counsel, exercised their business judgment and determined that the amount of the

22   negotiated fee reflects fair value for the substantial financial and governance benefits conferred upon

23   Finisar by Plaintiffs' Counsel's efforts.  Pardun Decl., ¶¶7-8; Joint Decl., ¶58.

24           There is no question the financial benefits and corporate governance reforms achieved as a

25   result of Plaintiffs' Counsel's prosecution and settlement of the Actions provide substantial benefits

26   to Finisar and its shareholders.  Pardun Decl., ¶¶7-8; Fried Decl., ¶38.  The financial recovery alone

27   covers 100% of Finisar's losses that resulted from the exercise of mispriced options by employees,

28   100% in 409A and related taxes paid by Finisar as a result of mispriced options, and the majority of

869440_1

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL          - 20 -

1   the losses due to mispriced options related audit, SEC and NASDAQ inquires.  Pardun Decl., ¶4.

2   The extensive corporate governance reforms are equally, if not more, valuable to Finisar and "could

3   easily reach tens of millions of dollars, or more."  Fried Decl., ¶¶9, 38.  These corporate governance

4   measures will not only reduce the chance of the improprieties alleged by Plaintiffs occurring in the

5   future, but also will make the Finisar Board more effective representatives of shareholders, thus

6   providing additional substantial benefits and value to Finisar and its shareholders.  *Maher*, 714 F.2d

7   at 461 ("effects of the suit on the functioning of the corporation may have a substantially greater

8   economic impact on it, both long- and short-term, than the dollar amount of any likely judgment");

9   Fried Decl., ¶¶9, 22-23, 38.

10          Accordingly, the separately negotiated fee, negotiated by the Independent Directors, with the

11   aid of experienced counsel, should also be approved by the Court.

12   **VI.      CONCLUSION**

13          The Settlement achieved represents an outstanding result for Finisar and its shareholders and

14   constitutes one of the strongest and most comprehensive settlements of its kind to date.

15   Accordingly, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and

16   should be approved by the Court.

17   DATED:  September 12, 2013            Respectfully submitted,

18                                        ROBBINS GELLER RUDMAN
                                            & DOWD LLP
19                                        SHAWN A. WILLIAMS
                                          CHRISTOPHER M. WOOD

20

21                                                    s/ Shawn A. Williams
22                                             SHAWN A. WILLIAMS

23                                        Post Montgomery Center
                                          One Montgomery Street, Suite 1800
24                                        San Francisco, CA  94104
                                          Telephone:  415/288-4545
25                                        415/288-4534 (fax)

26

27

28

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL          - 21 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

SAXENA WHITE P.A.
MAYA SAXENA
JOSEPH E. WHITE
2424 N. Federal Highway, Suite 257
Boca Raton, FL  33431
Telephone:  561/394-3399
561/394-3382 (fax)

Co-Lead Counsel for Plaintiffs

NOT OF MTN AND MTN FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-06-07660-RMW-HRL                    - 22 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 12, 2013.

<u>s/ Shawn A. Williams</u>
SHAWN A. WILLIAMS

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  shawnw@rgrdlaw.com

## Mailing Information for a Case 5:06-cv-07660-RMW

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Aelish Marie Baig**
  AelishB@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **David Banie**
  banie@banishlaw.com

- **Jessica Robyn Bogo**
  jessica.bogo@pillsburylaw.com

- **Arlena Victoria Carrozzi**
  arlena.carrozzi@bullivant.com,roberta.beach@bullivant.com,#sanfranciscodocketing@bullivant.com

- **Travis E. Downs , III**
  travisd@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **David M. Doyle**
  doyled@gtlaw.com,SFOLitDock@gtlaw.com,tasistaj@gtlaw.com

- **Sarah A. Good**
  sarah.good@pillsburylaw.com,docket@pillsburylaw.com,winnie.girard@pillsburylaw.com

- **Benny Copeline Goodman , III**
  bennyg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin Kamuf Green**
  kgreen@rgrdlaw.com

- **Lester Rene Hooker**
  lhooker@saxenawhite.com,e-file@saxenawhite.com

- **Lawrence T. Hoyle , Jr**
  lhoyle@schnader.com,arubinsky@schnader.com

- **Jared Lee Kopel**
  jkopel@kopel-law.com

- **Andrew Dale Lanphere**
  andrew.lanphere@pillsburylaw.com

- **Diana Mariko Maltzer**
  diana.maltzer@dlapiper.com,christine.kunis@dlapiper.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Stephen D Poss**
  sposs@goodwinprocter.com

- **David Allen Priebe**
  david.priebe@dlapiper.com,margaret.austin@dlapiper.com,carmen.manzano@dlapiper.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Seth Adam Safier**
  seth@gutridesafier.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,bcartier@goodwinprocter.com,sposs@goodwinprocter.com,sasmith@goodwinprocter.com,monyeagbako@goodwinprocter.com,cburgos@goodwinpro

- **Monique C. Winkler**
  winklerm@sec.gov,alcairoe@sec.gov,johnstonj@sec.gov,maguirep@sec.gov

- **Christopher Martin Wood**
  cwood@rgrdlaw.com,khuang@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Amanda          M Frame
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
```